STATE, *ex rel.* JOHN D. BAKER, individually and as Clerk of the Civil and Criminal Courts of Record of Duval County; CLYDE SIMPSON, individually and as Tax Collector of Duval County; A. H. ST. JOHN, individually and as Tax Assessor of Duval County; REX SWEAT, individually and as Sheriff of Duval County, v. R. T. GRAY, FRED E. BIGGS, *et al.,* as County Commissioners of Duval County; and ELLIOTT W. BUTTS, as Clerk of the Circuit Court of Duval County, and as Clerk and Accountant of the Board of County Commissioners of Duval County.

182 So. 620.
Opinion Filed July 1, 1938.

*Edward S. Hemphill,* for Relators;

*Fant & Stanly,* for Respondents.

BUFORD, J.—This is an original mandamus proceeding in this Court. The alternative writ of mandamus alleges in effect that the respective officiers, relators, are entitled to receive the maximum sum of $7,500.00 per annum as compensation for their services under the provisions of Chapter 11954, Acts of 1927, being Sections 2865-2869, inclusive, C. G. L.; that under the provisions of Section 4 of that chapter such officers are severally required to render to the Board of County Commissioners at the expiration of each semi-annual period a sworn statement showing expenses' of the offices, the fees and commissions collected and the gross and net income thereof, which reports are required to be recorded in the minutes of the Board of County Commissioners and that Section 3 further provides that it is the duty of each official respectively to pay annually to the Board of County Commissioners all moneys in excess of the sum to which, under the provisions of the statute, *supra,* the official is entitled to retain as his compensation. That in 1929 the Legislature enacted Chapter 14502, which supplemented the provisions of Chapter 11954 relative to the filing of reports by county officers, but made no change material here.

It is alleged that the two statutes, *supra,* are the valid and subsisting laws governing the compensation to be paid to the County Officers in the State of Florida, and have been so since their respective enactment. That the Legis-

lature of 1931 attempted to enact a law, Chapter 14666, which statute purported to fix the annual compensation of the Clerk of the Circuit Court, the Sheriff, the Tax Collector, the Tax Assessor, the County Judge, the Superintendent of Public Instruction and the Clerks of the Civil and Criminal Courts of Record in counties having a population of more than 155,000 according to the last Federal census, at a sum equal to all the net income of the office not exceeding $6,000.00 per annum and to require the making of reports. It is alleged that this purported chapter is invalid because it was not passed in conformity with Sections 20 and 21, as amended, of Article III of the Constitution for the following reasons:

"(a) The chapter uses population as the sole basis of classification and attempts to regulate the jurisdiction and duties of officers (not municipal) by local or special law.

"(b) The chapter uses population as the sole basis of classification; and attempts to regulate the fees of officers of the County by local or special law.

"(c) The chapter appertains to the duties of officers (not municipal) and attempts to regulate the fees of County Officers, by a law not of general and uniform operation throughout the State.

"(d) The said chapter is a special or local law; and was not advertised prior to its introduction in the Legislature; nor do the Journals of the House of Representatives or the Senate contain any affidavit or proof of publication of advertisement; nor does the chapter contain any provision for a referendum."

That in 1935 the regular session of the Florida Legislature attempted to pass an Act known as Chapter 16929, which chapter by its title purported to amend Chapter 14666, *supra,* so as to apply to all counties in the State having a

population of 150,000 according to the last or any future Federal or State census, but by the terms of the body of the Act it purported to apply to counties having a population of more than 150,000 according to the last or any future Federal or State census and that Chapter 16929 is invalid for the same reasons as are alleged to be the invalidity of Chapter 14666 and for the additional reason that Chapter 16929 violates Section 16 of Article III of the Florida Constitution in that the title applies to counties having a population of 150,000 while the body of the Act applies to counties having a population of more than 150,000.

It is alleged that prior to January 1, 1938, relators were advised that Chapter 14666 and Chapter 16929 aforesaid were invalid and unconstitutional and were not controlling as to the respective County Officers in Duval County, which county has a population according to the last State census, which is the last available census, of 175,204, and that thereupon the relators made and filed their sworn statements in accordance with the provisions of Chapter 11954 and 14502, *supra,* and did compensate themselves severally in accordance with the provisions of Chapter 11954, as follows:

"The relator, John D. Baker, in the amount of $721.15 as additional compensation for the year 1936 from the net income of his office of Clerk of the Civil and Criminal Courts of Record of Duval County of 1936 received in 1937, and $7,500.00 for the year 1937 from such income of 1937; the relator, Clyde Simpson, in the amount of $1,500.00 as additional compensation for the year 1936 from the net income of his office of Tax Collector of 1936, received in 1937 and $7,500.00 for the year 1937 from such income of 1937; the relator, A. H. St. John, in the amount of $1,378.40 as additional compensation for the year 1936 from the net income of his office of Tax Assessor of Duval County, re-

ceived in 1937, and $7,500.00 for the year 1937 from such income of 1937; and the relator, Rex Sweat, in the amount of $1,500.00 as additional compensation for the year 1936 from the net income of his office of Sheriff of Duval County of 1936, received in 1937, and $7,374.68 for the year 1937, from such income of 1937.

"For 1936 relators filed their statements and compensated themselves on a $6,000.00 annual basis; not then having been advised of the invalidity of Chapter 14666 and 16929. The additional compensation for the year 1936 above referred to was taken in 1937 from earnings of 1936 collected in 1937; and said relators did severally deliver to respondents their checks in the following amounts: John D. Baker, $5,369.84; Clyde Simpson, $25,463.91; A. H. St. John, $12,414.21; Rex Sweat, $854.03, being the excess of the sums to which relators were respectively entitled under the provisions of said Chapter 11954; but the respondent, Butts, as Clerk and Accountant of the Board of County Commissioners of Duval County, Florida, has refused and does refuse to audit and approve the statements so filed, and has refused and does refuse to accept the respective checks in full satisfaction of moneys due the Board of County Commissioners from the respective relators as County Officials (sometimes called 'fee officers'), and the respondents, R. T. Gray, Fred E. Biggs, D. C. Brown, James G. Cary and Ray Greene, as members of the Board of County Commissioners of Duval County, Florida, have refused and do refuse to approve the said respective statements of relators, and to accept the same, and to record said statements in the minutes of said Board and further refuse to accept the sum of $5,369.84 from the relator, John D. Baker; the sum of $25,463.91 from the relator, Clyde Simpson; the sum of $12,414.21 from the relator, A. H. St. John; and the sum of $854.03 from the relator, Rex Sweat; in discharge of

their respective duties to report and account as county officials (sometimes called fee officers) of Duval County, Florida, and to pay over any excess funds.

"6. That Chapter 11954 aforesaid is the law determining the compensation of the relator, John D. Baker, as Clerk of the Civil and Criminal Courts of Record of Duval County, Florida; Clyde Simpson, as Tax Collector of Duval County, Florida; A. H. St. John, as Tax Assessor of Duval County, Florida, and Rex Sweat, as Sheriff of Duval County, Florida, and the law under which they respectively report, together with Chapter 14502; that said Chapter 11954 is a general law based upon a reasonable classification, namely, net income of the office, and is of general and uniform operation throughout the State; that neither Chapter 14666 nor Chapter 16929 are of general and uniform operation throughout the State. If either of said Acts are valid the relators, Clyde Simpson, A. H. St. John and Rex Sweat, fee officers of Duval County with a population of 175,204, would respectively be entitled to receive a maximum of $6,000.00 per annum, while the same officers of the following counties of the State of Florida: Orange (population 58,184), Palm Beach (population 53,194), Pinellas (population 64,638), Volusia (population 50,550), would be entitled to receive each a maximum of $7,500.00 per annum as compensation; and for the year 1935, 1936 and 1937 the said officers of said counties did receive as compensation each an amount in excess of $6,000.00 per annum. Without disparaging the work or importance of corresponding officers in the above counties of Orange, Palm Beach, Pinellas and Volusia, a greater volume of work is performed by relators, Simpson, St. John and Sweat, in the performance of the respective duties of their offices, and their respective responsibilities are more heavy

than those resting upon the same county officials in the other counties enumerated.

"As to the relator, John D. Baker, he holds office as Clerk of the Civil and Criminal Courts of Record of Duval County, Florida, under the provisions of Chapter 8521, Acts of 1921, and as such is entitled to receive the same compensation as Clerks of Circuit Courts of the State of· Florida; that if Chapter 14666 or 16929 aforesaid are valid the relator, John D. Baker, would be limited in compensation to a maximum of $6,000.00 per annum while under the general law Clerks of the Civil and Criminal Courts of Record in those counties in the State of Florida having such courts would be entitled to receive a maximum of $7,500.00 per year and without disparaging the work or importance of the offices of Clerk of the Civil and Criminal Courts of Record in other counties having such courts the work and responsibilities attached upon the Clerk of such Court in Duval County are no less than in other counties having such courts.

"7. It is the duty of the respondent, Butts, as Clerk and Accountant of the Board of County Commissioners of Duval County, Florida, under the provisions of Chapter 11954, *supra,* and under the directions and instructions of the Board of County Commissioners of Duval County, Florida, promulgated by said Board under the authority of Section 1498, Revised General Statutes of Florida, 1920 (Sec. 2261, Compiled General Laws of 1927) to audit the respective statements of relators, and to approve them if they be correct and in accordance with law, but these things the said respondent has refused, and does refuse to do.

"8. It is the duty of the respondents, R. T. Gray, Fred E. Biggs, D. C. Brown, Ray Green and James G. Cary, under the provisions of Chapter 11954 aforesaid, to receive relators' respective statements made and tendered in ac-

cordance with Chapters 11954 and 14502, and to approve and record them in the minutes of the meeting of the said Board, and to pass resolutions approving the respective statements, and further to accept from the relator, John D. Baker, the sum of $5,369.84; from the relator, Clyde Simpson, the sum of $25,463.91; from the relator, A. H. St. John, the sum of $12,414.21; and from the relator, Rex Sweat, the sum of $854.03 in full discharge of their respective liabilities to account under said Chapter 11954 and of their respective duties to pay excess sums to said Board; but said respondents have refused and do refuse to perform any and all of said acts."

The command of the writ is:

"(a) That you Elliot W. Butts as Clerk of the Circuit Court of Duval County, Florida, and Clerk and Accountant for the Board of County Commissioners of Duval County, Florida, do audit the respective sworn statements of John D. Baker, as Clerk of the Civil and Criminal Courts of Record of Duval County, Florida; Clyde Simpson, as Tax Collector of Duval County, Florida; A. H. St. John as Tax Assessor of Duval County, Florida; and Rex Sweat as Sheriff of Duval County, Florida, for the year 1937, heretofore rendered to the Board of County Commissioners of Duval County, Florida, in accordance with Chapter 11954, Laws of Florida, 1927, and Chapter 14502, Laws of Florida, 1929, and that such audit be made in accordance with the provisions of Chapter 11954 and Chapter 14502, and that you Elliot W. Butts as Clerk and Accountant of said Board of County Commissioners of Duval County, Florida, do approve the same. (b) That you R. T. Gray, Fred E. Biggs, D. C. Brown, James G. Cary and Ray Greene, as County Commissioners of Duval County, Florida, do receive the respective sworn statements of the relators, John D. Baker as Clerk of the Civil and Criminal

Courts of Record of Duval County, Florida; Clyde Simpson as Tax Collector of Duval County, Florida; A. H. St. John as Tax Assessor of Duval County, Florida, and Rex Sweat as Sheriff of Duval County, Florida, heretofore rendered you in accordance with the provisions of Chapter 11954, Laws of Florida, 1927, and Chapter 14502, Laws of Florida, 1929, and do approve the respective sworn statements as conforming to the requirements of Chapter 11954, Laws of Florida, 1927, and Chapter 14502, Laws of Florida, 1929, and as conforming to the requirements of the Laws of Florida relative to the respective duties of said John D. Baker as Clerk of the Civil and Criminal Courts of Record of Duval County, Florida; Clyde Simpson as Tax Collector of Duval County, Florida; A. H. St. John as Tax Assessor of Duval County, Florida; Rex Sweat as Sheriff of Duval County, Florida, and do record such sworn statements in the minutes of the meetings of the Board of County Commissioners of Duval County, Florida, and do pass a resolution approving the respective sworn statements and do accept the sum of $5,369.84 from said John D. Baker as Clerk of the Civil and Criminal Courts of Record of Duval County, Florida; the sum of $25,463.91 from Clyde Simpson as Tax Collector of Duval County, Florida; the sum of $12,414.21 from A. H. St. John as Tax Assessor of Duval County, Florida; and the sum of $854.03 from Rex Sweat as Sheriff of Duval County, Florida, in full discharge of their respective liabilities to account under the laws of Florida, and their respective duties under such laws to pay excess sums to the Board of County Commissioners of Duval County, Florida; or that you show cause on the 12th day of April, A. D. 1938, why a peremptory writ should not be issued by this Court commanding the same to be done."

The relators have suggested three questions for our determination as follows:

"Where a title to an Act of the Legislature recites that it applies to counties in the State having a population of 150,000; but the body of the Act provides that it shall apply to counties having a population of more than 150,000, is there a compliance with Section 16 of Article III of the Florida Constitution, which requires the subject of the Act to be briefly expressed in the title?

"II.

"Can population be the sole basis for classification of counties for the purpose of fixing the compensation of the so-called county fee officers in Florida?

"III.

"Where a county fee officer has compensated himself and accounted for a given year under a statute subsequently found to be invalid; and afterwards collects money representing earnings of the year already accounted for, may he apply these amounts so collected to the payment of the balance due on the compensation to which he was lawfully entitled for that year?"

We think the first question stated may be passed over without comment.

If Chapter 14666, *supra,* and Chapter 16929, *supra,* are invalid as statutes fixing the compensation of the involved officers, then the compensation applicable to the respective officer is that fixed by Chapters 11954 and 14502, *supra.*

Section 20 of Article III of our Constitution provides:

"The Legislature shall not pass special or local laws in any of the following enumerated cases, that is to say * * * regulating the fees of officers of the State and County."

Section 21 of Article III of our Constitution provides:

"In all cases enumerated in the preceding section all laws shall be general and of uniform operation throughout the State, but in all cases not enumerated or excepted in that section, the Legislature may pass special or local laws except as now or hereafter otherwise provided in the Constitution: Provided, that no local or special bill shall be passed, unless notice of the intention to apply therefor shall have been published in the locality where the matter or thing to be affected may be situated, which notice shall state the substance of the contemplated law, and shall be published at least thirty days prior to the introduction into the Legislature of such a bill, and in the manner to be provided by law. The evidence that such notice has been published shall be established in the Legislature before such bill shall be passed by having affidavit of proof of publication attached to the proposed bill when the same is introduced in either branch of the Legislature, and which such affidavit constituting proof of publication shall be entered in full upon the Journals of the Senate and of the House of Representatives, which entries shall immediately follow the journal entry showing the introduction of the bill."

The provisions of Section 21 were not complied with so as to make Chapters 14666 and 16929, *supra,* valid special or local laws if it was within the power of the Legislature to enact such statutes as local laws. That the Legislature may enact a statute, the operation of which is required to be uniform throughout the State, using population as a classification cannot be disputed. This power was recognized in the case of Givens v. County of Hillsborough, *et al.,* 46 Fla. 502, 35 Sou. 88, 110 Am. St. Rep. 104, and has been recognized in this jurisdiction in numerous cases since that time, but such classification cannot be arbitrarily and unreasonably used.

In State of Florida, *ex rel.* Buford, v. Shepard, 84 .Fla. 206, 93 Sou. 668, we held:

"In providing that 'the Legislature shall not pass special or local laws' in any of the 'enumerated cases,' among which 'cases' is 'regulating the fees of officers of the State and county,' and that in all such cases laws 'shall be general and of uniform operation throughout the State,' the Constitution distinguishes between 'special or local laws,' and laws that 'shall be general and of uniform operation throughout the State,' without defining either class of laws; but generality and uniformity of operation do not forbid reasonable classifications, and the legality of a legislative classification depends upon its reasonableness with reference to the nature of the subject upon which the law is to operate.

"2.   A classification may be reasonable and practicable as applied to one subject, and yet be arbitrary, unjust and impractical as applied to another subject of legislation. Likewise one classification of a subject may be arbitrary while another classification may be reasonable, practical and properly predicated on the subject.

"3.   If a classification is arbitrary and without a fair basis in the subject and object of the legislation, it is not permitted as a classification to affect the organic rule requiring generality and uniformity of operation throughout the State."

See also Flood v. State, 100 Fla. 70, 129 Sou. 861.

In Latham, *et al.,* v. Hawkins, *et al.,* 121 Fla. 324, 163 Sou. 709, we said:

"The interpretation of both statutory and constitutional provisions may be controlled by their practical operation and effect.   It is shown that Chapter 15608, while potentially applicable to a 'class of counties, is at present applicable to Volusia County only, and results in the payment

of a different compensation to officers in that county from that paid the same officers in other counties similarly situated. · In other words, it affects the same officers in similar situations differently and in that respect departs from the constitutional requirements of uniformity.

"Chapter 15608 does not attempt a general classification of the counties of the State on some reasonable basis for the purpose of regulating the fees of county officers. This Court has repeatedly recognized classification based on population as proper and reasonable, but when making classifications that must be 'general and of uniform operation throughout the State' as a basis for the salaries of county officers, other elements besides population must enter into the classification.

"It is not permissible for the Legislature to single out the officers of one county and under the guise of population or on any other basis of classification impose conditions on them different in effect and operation from others similarly situated throughout the State.

"In State v. Shepard, 84 Fla. 206, 93 Sou. 667; State v. Watkins, 88 Fla. 392, 102 So. 347; Flood v. State, 100 Fla. 70, 129 So. 851, and other cases of like import, we held that classifications to regulate the compensation of county officers in addition to being based on population must be influenced by other elements such as a prescribed portion of net income from the office, and that when made, the classification should operate alike on all similarly situated.

"If the Act under review is permitted to stand, then the Legislature can single out every county in the State and under the guise of a local law fix the compensation of county officers, arbitrarily and without refernce to the organic mandate. General uniformity and operation would be destroyed and caprice substituted as a basis for determining the com-

pensation of county officers. This should be done by general law treating the whole subject matter.

"In our view the decree of the chancellor was correct and is hereby affirmed. Knight v. Board of Public Instruction, 102 Fla. 922, 136 So. 631; State v. O'Quinn, 114 Fla. 222, 154 So. 166; Stribling v. Thomas, 101 Fla. 1015, 132 Sou. 824; Jordan v. State, 100 Fla. 494, 129 So. 747."

While it is true that the Acts here under attack purport to apply to three counties in the State, it is equally true that there is no basis for the classification except population. It is a matter of common knowledge and, therefore, one of which this Court will take judicial cognizance, that the larger the population of the county the greater is the responsibility of county officers. This is just as true as is the fact that the larger the volume of any business becomes, the greater is the responsibility of the officers charged with the handling and conducting of such business. This Court has upheld a few statutes applying only to counties being in the higher bracket as to population upon the theory that such statutes were based upon a lawful classification. For instance, in the case of State v. Daniel, 87 Fla. 270, 99 Sou. 804, in which the Act creating a Welfare Board in counties having a population of over 100,000 was held valid because it was apparent that the service of such an instrumentality might be needful and expedient in counties having so large a population as that named, while there was little or no necessity for same in smaller counties. To like effect was the holding in Sparkman v. County Budget Commission, 103 Fla. 224, 137 Sou. 809. This was held valid upon the theory that counties having a population of more than 150,-000 can reasonably be presumed to require the services of a Budget Commission and while the classification might well have been extended to larger number of counties, it was recognized that the Legislature might determine when

a county had reached such proportions in population as to require the services of a Budget Commission. But, certainly there can be no conceivable, reasonable basis for a classification under which the compensation of certain county officers in counties having a population of more than 155,000 shall be 20% less than the compensation allowed by law to like officers of other counties like situated in all respects, except having a smaller population.

For the reasons stated, we hold that Chapters 14666 and 16929, *supra,* are invalid.

It is next contended that even if those Acts are invalid the respective officers are not entitled to be compensated to the extent contemplated by Chapter 11954, *supra,* out of fees earned during the last six months of 1936 and collected during the year 1937 because the officers had made their reports at the end of the year 1936 under the provisions of Chapter 14666 and did receive compensation for that period under the latter Act. Here we have the condition that the officers earned certain fees in 1936 which were not collected until 1937. This money was not paid over to the Board of County Commissioners under the accounting for 1936, but was held and reported in the accounting for 1937 and certain portions thereof were claimed by the officers to apply on the amounts due them under controlling law for the year 1936.

We think this question is settled by the opinion and judgment in the case of State, *ex rel.* Henderson, v. Foley, *et al.,* 118 Fla. 885, 160 Sou. 523, wherein we said:

"It is established by relator, and is not attempted to be controverted by respondents, that what purports to be Chapter 15974, Acts of 1933, never became a law of the State of Florida by reason of the Legislature's non-compliance with Section 17 of Article III of the Florida Constitution requiring the *yea* and *nay* vote on the final passage of House

Bill No. 1192 to be taken and recorded on the journals of the respective Houses of the Legislature, in consequence of which fact the due enactment of said House Bill No. 1192 as Chapter 15974 never became an accomplished legislative Act. It thus appears that the provisions of Chapter 15974, Acts of 1933, are null and void because never enacted into law in the manner required by the State Constitution, if indeed, it was permissible at all for the Legislature by a special Act of the character of the said Chapter 15974, Acts of 1933, to single out officers of a single county for the purposes of legislating in the manner attempted by the said purported enactment, a subject upon which we express no opinion at the present time in view of our finding that House Bill No. 1192 never properly and constitutionally passed the Legislature.

"The defenses of waiver, *laches* and estoppel by the respondents cannot avail them as a legal justification for refusing to acknowledge and follow the applicable provisions of Chapter 11954, Acts of 1927, as amended by Chapter 14502, Acts of 1929, under which relator has sought relief in the present litigation. The matter now presented relates to an attempted proceeding by the relator in accordance with the general laws of the State last referred to, and both relator and respondents are bound by said laws and in duty bound to yield the same obedience in their official dealings and relationships with each other.

"This is not to hold that relator would be entitled to recover back from Polk County any moneys heretofore voluntarily renounced and finally paid in to the county by reason of the supposed effect of Chapter 15974, *supra,* in the mistaken belief on relator's part that said Chapter 15974 was at the time a valid law of the State and required such payments to be made. Indeed, no such claim is here asserted. And if it were, the law on the subject of recov-

ering back moneys so voluntarily relinquished and paid in under a mistake of law has been decided adversely to the existence of any such asserted right. McLeod v. Santa Rosa County, 116 Fla. 838, 157 Sou. Rep. 37; Jefferson County v. Hawkins, 23 Fla. 223, 2 Sou. Rep. 362."

The moneys involved here had not been paid into the county, but were still held by the officers and reported with claim for compensation therefrom.

In State, *ex rel.* Hughes, v. Caruthers, filed March 30, 1938, reported 180 Sou. 27, we held:

"1. Under statute allowing tax collector commission on sale of tax certificates when actual sale is made, a tax collector cannot recover compensation after expiration of term of office as to any counties wherein tax collector received the maximum compensation allowed him during his incumbency in office, but, in counties in which tax collector's compensation has not amounted to maximum, he is entitled to 5 per cent. commission on all amounts received for certificates redeemed. Comp. Gen. Laws Supp. 1932, Sec. 970.

"2. Under statute respecting payment of commissions to tax collector upon sale of tax certificates, tax collector who during his incumbency in office from 1913 to 1936 did not receive as compensation the amount allowed as maximum by law, was entitled to be paid 5 per cent. as commission on all amounts received for certificates redeemed according to statute, notwithstanding that he was no longer in office. Comp. Gen. Laws Supp. 1932, Sec. 970; Acts 1937, c. 18296."

Now, certainly if the Tax Collector who earned fees by issuing tax certificates during his tenure of office from 1913 to 1936 is entitled to have those fees paid over to him when the certificates are sold or redeemed long after his term of

office has expired, the county officers here involved are not estopped to have the compensation earned in 1936 paid out of moneys received for that service in 1937.

For the reasons stated, the peremptory writ should issue and it is so ordered.

WHITFIELD, BROWN and CHAPMAN, J. J., concur.