**TUDOR DEVELOPMENT
GROUP, INC., et al.**

v.

**UNITED STATES FIDELITY &
GUARANTY COMPANY,
et al.**

No. 88–0758.

United States District Court,
M.D. Pennsylvania.

July 3, 1991.

See also 692 F.Supp. 461.

Mitchell R. Leiderman, Media, Pa., for plaintiffs.

Lewis S. Kunkel, Jr., Timothy B. Anderson, Pepper, Hamilton & Scheetz, Harrisburg, Pa., for intervenor Green Hill Project Investors, Inc.

Audrey E. Woloshin, Katherman & Heim, P.C., York, Pa., for intervenor York Excavating Co., Inc.

MEMORANDUM

McCLURE, District Judge.

I. BACKGROUND

Plaintiffs Tudor Development Group, Inc. ("Tudor"), Sidney Cohen, Dorothy Cohen and Marc Cohen, collectively trading as Green Hill Associates ("GH Associates"), initially filed this action against United States Fidelity & Guaranty Corporation

**494**

(USF & G).[1] USF & G was the performance bond surety for certain phases of a real estate development (the "Green Hill Project"), being constructed for GH Associates by Susquehanna Construction Company ("Susquehanna"). GH Associates settled its claims against USF & G on November 20, 1989 and the settlement proceeds of $594,000.00 were paid into court.[2]

In this action, four parties associated with the Green Hill Project[3] asserted claims against the escrowed funds: GH Associates, Green Hill Project Investors, Inc. ("GHP Investors")[4], Dauphin Deposit Bank and Trust Company ("Dauphin De-

1. Green Hill Associates is a Pennsylvania limited partnership. Tudor Development Group, Inc. ("Tudor"), is a general partner, and the Cohens are limited partners.

2. The court entered an order dismissing the case against USF & G with prejudice on January 25, 1990.

3. The circumstances surrounding work on the project are recited in detail in our prior memorandum dated January 7, 1991, and we will not reiterate them here.

4. GHP Investors is a Delaware corporation.

5. The record before the court for purposes of ruling on the parties motions for judgment on the pleading consists of all pleadings and attachments thereto.

6. ECU entered into a contract with Tudor in which it agreed to:

[s]upply all labor, material, and equipment to complete paving and earth work in Green Hill Development in Susquehanna Township as per plans and specs prepared by Akens Engineering Associates, Inc. dated August 8, 1985. All work to be inspected and approved by Susquehanna Township Authority and Shutt Mill Road accepted for dedication by same.

. . . .

Supply all labor, material, and equipment to complete installation of Sanitary Sewer Lines and Appurtenances and Storm Sewer & Appurtenances for Green Hill Apartments. All work to be done in accordance with plans and specs prepared by Akens Engineering Associates, Inc. dated August 8, 1985.

(Statement of material facts submitted by GHP Investors, filed February 6, 1990, Exhibit A, Schedule A)

Attached to the ECU contract was a more detailed description of the work to be performed, which read as follows:
1. Internal Roadways
2. Parking areas and driveways
3. Storm drainage

posit"), and York Excavating Company, Inc. ("York").[5] Summary judgment was entered against Dauphin Deposit on January 7, 1991. York, GH Associates and GHP Investors remain parties to the action.

York's claim stems from work which it performed as a sub-contractor on the Green Hill Project. It contracted with Eastern Consolidated Utilities, Inc., ("ECU"),[6] the contractor responsible for constructing roads, parking areas, and doing other paving and "site work."[7] York alleges that it was never paid for work which it per-

(a) Collection System
(b) Detention Basin
4. Shutt Mill Road
(a) Relocating a portion of the road
(b) Widening, on and off site to Paxton Church Road
(c) Curb and Sidewalk
5. Crooked Hill Road
6. Clearing and stripping topsoil, bringing recreation areas to grade and improving with topsoil and installing retaining walls

(Statement of material facts submitted by GHP Investors, filed February 6, 1990, Exhibit A, Schedule A, Addendum A)

To secure its performance on the contract, ECU obtained subcontract labor and material payment bonds, dated July 1, 1986, from Wausau Insurance Company in the amount of $790,000.00. The bonds named ECU as the principal, and Tudor as the general contractor. (A copy of the bond is attached as Exhibit B to the Statement of material facts submitted by GHP Investors, filed February 6, 1990, Exhibit A, Schedule A, Addendum A.)

Tudor subsequently assigned all of its rights and interests in the Wausau bonds to Dauphin Deposit as collateral for the letter of credit which it issued in favor of Susquehanna Township as assurance that funding would be available for completion of the site work.

7. York signed two contacts with ECU and GH Associates. In the first, dated August 8, 1986, it was agreed that York would:

Supply all labor, material, and equipment to complete earthwork, S & E Control and pond and Appurtenances for Green Hill Apartments. All work to be done in accordance with final plans and specs (Sheets 1 thru 21) dated July 15, 1986 prepared by Akens Engineering Associates, Inc.

(Statement of material facts submitted by GHP Investors, filed February 6, 1990, Exhibit G)

The second contract, dated September 26, 1986 specified additional site work which York was to perform. (See: Cross Claims of Dauphin Deposit, filed January 22, 1990, para. 11)

formed on a time and materials basis between August, 1987 and November, 1987 and claims that it is owed a balance of $70,962.50.

GHP Investors and GH Associates have filed motions for judgment on the pleadings against York (Record Document Nos. 103 and 106). After considering the arguments raised by the parties, we find that judgment on the pleadings against York is appropriate and will enter an order to that effect.

## II. DISCUSSION

### A. Motion for judgment on the pleadings standard

Judgment on the pleadings is appropriate only if there is no issue of material fact and if the pleadings demonstrate that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 12(c). "The trial court is required 'to view the facts presented in the pleadings and inferences to be drawn therefrom in the light most favorable to the non-moving party.'" *Hayes v. Community General Osteopathic Hospital*, 730 F.Supp. 1333, 1334 n. 1 (M.D.Pa.1990), (Caldwell, J.), citing *Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1058 (3d Cir.1980). This requires the court to accept plaintiff's allegations in the complaint, even if they conflict with the defendant's answer. *Hayes, supra*, 730 F.Supp. at 1334 n. 1.

### B. Laches

 GHP Investors and GH Associates (hereafter collectively "movants") contend that York's claim is barred by laches. York asserts a subrogation claim against the escrowed funds. A right of subrogation is one based on considerations of equity and good conscience. Even if it is contractually based, it is, nevertheless, regarded as based upon and governed by equitable principles. *Allstate Insurance Co. v. Clarke*, 364 Pa.Super. 196, 527 A.2d 1021, 1023–1024 (1987).

 Laches is an equitable doctrine which provides that if a plaintiff in equity has failed to exercise due diligence in pros-

ecuting his claim, to the detriment of the other party, the claim is barred. *Siegel v. Engstrom*, 427 Pa. 381, 385, 235 A.2d 365, 367 (1967) and *Hankin v. Mintz*, 276 Pa.Super.Ct. 538, 542, 419 A.2d 588, 590 (1980). In determining whether a party exercised due diligence, the focus is on what the party reasonably should have known "'by the use of the means of information within his reach, with the vigilance the law requires'", not on what he or she actually knew. *Sprague v. Casey*, 520 Pa. 38, 46, 550 A.2d 184, 188 (1988), quoting *Taylor v. Coggins*, 244 Pa. 228, 231, 90 A. 633, 634 (1914). "What the law requires of ... [a claimant] is to discover those facts which were discoverable through the exercise of reasonable diligence." *Sprague, supra*, 550 A.2d at 188. "[L]aches entails an inquiry into whether the party is deserving of the court's relief." *Waddell v. Small Tube Products, Inc.*, 799 F.2d 69, 76 (3d Cir.1986).

The Pennsylvania courts have held that a claim is barred by laches if the following conditions exist:

> The party asserting laches must show, first, a delay arising from the other party's failure to exercise due diligence, and second, prejudice from the delay.... It is not enough to show delay arising from failure to exercise due diligence; for 'laches will not be imputed where no injury has resulted to the other party by reason of the delay.' .... (Citations omitted.).... Laches requires not only a passage of time, but also a resultant prejudice to the party asserting the doctrine.... (Citations omitted.).... [and] is based on 'some change in the condition or relations of the parties which occurs during the period the complainant unreasonably failed to act.' .... (Citations omitted.).... '[T]he burden of proof with respect to the doctrine [of laches] is upon the party asserting the defense; in order to meet this burden, the party alleging the delay must demonstrate prejudice.' ... (Citations omitted.).... '[D]elay alone, no matter how long, does not itself establish laches.' .... (Citation omitted.)

*Patten v. Vose,* —— Pa.Super. ——, 590 A.2d 1307 (1991).

■ Prejudice may, for example, be shown if relevant records have disappeared, if a key witness is now deceased, or cannot be located, or if the defendant changed his position based on the expectation that plaintiff did not intend to pursue the claim. See: *Del–Val Electrical Inspection Service, Inc. v. Stroudsburg–East Stroudsburg Zoning and Codes Office,* 100 Pa.Commonwealth Ct. 429, 515 A.2d 75, 76 (1986), citing *Class of Two Hundred Administrative Faculty Members v. Scanlon,* 502 Pa. 275, 466 A.2d 103 (1983).

■ The burden of establishing laches is on the party asserting it as a defense, *unless* the analogous statute of limitations has expired. In that case, the burden is on the claimant to show why his claim should not be barred by laches. *Wheeler v. Nationwide Mutual Insurance Co.,* 749 F.Supp. 660, 662 (E.D.Pa.1990).

■ Whether laches applies is a factual question, making it an inappropriate basis for summary judgment or judgment on the pleadings, *unless* the relevant facts are not in dispute. See generally: *Waddell, supra,* 799 F.2d 69, 74 n. 2 and *Sandvik v. Alaska Packers Ass'n,* 609 F.2d 969, 974 (9th Cir.1979). Additionally, "even if the ... court finds that the elements of laches have been proven, ... in the exercise of its discretion [it] 'must take into account whether or not a less drastic form of equitable relief than a complete dismissal of the action' would be appropriate." *Waddell, supra,* 799 F.2d at 79, quoting

*E.E.O.C. v. Great Atlantic & Pacific Tea Co.,* 735 F.2d 69, 81 (3d Cir.1984).

■ Returning to the case before us, we find that none of the relevant facts are in dispute. The relevant dates, listed chronologically, are as follows.[8] The general construction contract between Susquehanna and Green Hill Associates terminated in August, 1987 due to a disagreement between the parties. If the contract had not been terminated, Susquehanna was scheduled to complete work on the project by December 31, 1987. York performed corrective work at the project site from August 13, 1987 thorough November 5, 1987 for which it has not been paid.

Green Hill Associates filed this action on May 15, 1988 against Susquehanna's surety, USF & G. Thereafter, Dauphin Bank and Deposit and GHP Investors filed petitions to intervene. Both parties' petitions were granted. Dauphin Deposit filed a complaint on February 10, 1989, and GHP Investors filed a complaint on March 13, 1989. The claim against USF & G was settled on November 20, 1989, leaving GH Associates, Dauphin Deposit and GHP Investors as competing claimants for the settlement proceeds which were paid into court.

York filed a petition to intervene in this action on May 23, 1990. Leave was granted, and its complaint was filed January 28, 1991.[9] Summary judgment was entered against Dauphin Deposit on January 7, 1991.

Because York's petition to intervene was not filed until after expiration of the analogous statute of limitation,[10] it bears the

---

**8.** All of the facts recited are either in the pleadings or are facts of which the court may take judicial notice.

**9.** The delay between York's filing of its petition to intervene and its complaint, although immaterial on the issue of laches, was due to judicial oversight in considering the petition to intervene, rather than a lack of diligence on the part of York.

**10.** Pennsylvania has a one year statute of limitations for action on performance bonds, 42 Pa. C.S.A. § 5523. Here, the parties modified the statute by extending the period for filing an

action on the USF & G bond to two years from the date on which final payment under the general contract came due.

Payment for construction work is due when the work is completed by the contractor, unless the parties agree otherwise. *Ingrassia Construction Co., Inc. v. Walsh,* 337 Pa.Super. 58, 486 A.2d 478, 484 (1984). York does not allege that the parties agreed to a different payment schedule, so it was entitled to payment upon completion of the corrective site work. By its own admission, it completed the work on November 5, 1987. Therefore, its claim for payment accrued that date.

burden of proving that laches does not apply, i.e., that there was no delay arising from its failure to exercise due diligence, and that movants were not prejudiced by any delay.[11] *Patten v. Vose, supra.*

In determining whether York's filing was timely, we can look to the analogous statute of limitations as a guide, although it is not an absolute standard. *Kay v. Kay*, 460 Pa. 680, 334 A.2d 585, 587 (1975). The statute of limitations expired a year and one-half before York filed its petition to intervene. The two year claims-filing period established by the surety bond had also expired by the time York's petition was filed. Thus under either standard, York's petition to intervene was filed beyond the relevant statutory/contractual deadline.

Additionally, there is no question but that movants were prejudiced by York's delay in filing. It did not file its petition to intervene until months after movants had settled with USF & G, and the claims against USF & G had been dismissed with prejudice—until it was too late for movants to take York's claim into account in negotiating the settlement. They settled with the expectation that the settlement proceeds would be distributed among the three competing claimants who had asserted claims as of the date of settlement:[12] Dauphin Deposit, GH Associates, and GHP Investors. They had no reason to anticipate that additional claimants, such as York, would seek a share of the settlement proceeds at a later date. Because movants changed their position by settling with USF & G and reasonably relied on the assumption that no additional claims would be asserted, they were prejudiced by York's delay in filing its petition to intervene. Cf. *Associated Hospital Services of Philadelphia v. Pustilnik*, 262 Pa.Super. 600, 396 A.2d

1332, 1335 n. 1 (1979), *vacated on other grounds*, 497 Pa. 221, 439 A.2d 1149 (1981). Based on that finding, we conclude that York's claim is clearly barred by laches.

Finally, contrary to York's contentions, our prior order granting York leave to intervene did not encompass a finding that its claim is *not* time-barred. We considered the timeliness of the petition in terms of the procedural posture of the case,[13] not, as York seems to argue, in anticipation that York's opponents would raise the defense of laches. We did not rule at that time on the merits of York's claim (such a ruling would have been improper), but merely that York would be afforded an opportunity to plead the claim.

Our ruling that York's claim is barred by laches obviates the need to consider the other arguments raised by the movants.

### ORDER

For the reasons set forth in the accompanying opinion, IT IS ORDERED THAT:

1. The motion for judgment on the pleadings filed February 28, 1991 by Intervenor Green Hill Project Investors against York Excavating Company, Inc. ("York"), (Record Document No. 103) is granted.

2. The motion for judgment on the pleadings filed March 22, 1991 by plaintiff Green Hill Associates ("GH Associates"), (Record Document No. 106) is granted.

3. The motion for judgment on the pleadings filed March 12, 1991 by plaintiff GH Associates (Record Document No. 105) is deemed withdrawn pursuant to Local Rule 401.5 for failure to file a supporting brief.

4. The Clerk of Court is directed to defer entry of judgment against York until disposition of the entire case.

---

**11.** We note, also, that if the plaintiffs had not commenced this action against U.S.F. & G., York's claim would have been time-barred in any event, had it waited until May, 1989 to assert a claim against USF & G.

**12.** It is also significant in this context that the relevant statutory filing periods had expired by

the time of settlement. Based on that fact, the parties to the settlement could reasonably have expected that no additional, viable claims would be filed.

**13.** See Fed.R.Civ.P. 24(a).

5. The case is placed on the September, 1991 Williamsport jury trial list.[1]

6. A settlement conference will be held on August 1, 1991, at a time to be announced, in Room 409, Federal Building, 240 West Third Street, Williamsport, Pennsylvania.

7. All motions in limine shall be filed on or before August 16, 1991, with supporting briefs attached. All opposing briefs shall be filed on or before August 26, 1991.

8. A final pre-trial conference will be held on August 30, 1991, at a time to be announced, in Room 409, Federal Building, 240 West Third Street, Williamsport, Pennsylvania.

9. Jury selection will be September 3, 1991 at 9:30 a.m., in Courtroom No. 1, Federal Building, 240 West Third Street, Williamsport, Pennsylvania.

10. A status conference by telephone conference call will be held on July 18, 1991 at 4:30 p.m. Plaintiffs' counsel shall arrange for the conference call. Counsel shall be ready to proceed when my office is contacted.

---

1. Plaintiffs have made a demand for a jury trial pursuant to Fed.R.Civ.P. 38(b). (Plaintiff's complaint, Record Document No. 1, filed May 19, 1988).