718 A.2d 290

Gene STILP, Eric Epstein, and Thomas Linzey, Appellants,

v.

Barbara HAFER, Treasurer of the Commonwealth of Pennsylvania, Thomas Ridge, Governor of the Commonwealth of Pennsylvania, and Commonwealth of Pennsylvania, Appellees.

Supreme Court of Pennsylvania.

Submitted March 13, 1998.

Decided Oct. 1, 1998.

Gene Stilp, Pro Se, appellant.

Eric Epstein, Pro Se, appellant.

Thomas Linzey, Pro Se, appellant.

Calvin R. Koons, Asst. Atty., for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NIGRO, Justice.

This case presents the novel issue of whether a claim that a statute was enacted in violation of the procedures set forth in the Pennsylvania Constitution may be barred by laches. For the reasons discussed below, we conclude that laches may apply and we affirm the Commonwealth Court's decision that Appellants' challenge to the Low–Level Radioactive Waste Disposal Act, eight years after its enactment, is barred.

Appellants Gene Stilp, Eric Epstein and Thomas Linzey, appearing *pro se*, filed a complaint in mandamus in Commonwealth Court requesting injunctive and declaratory relief against Appellees Treasurer Barbara Hafer, Governor Thomas Ridge and the Commonwealth of Pennsylvania. Appellants are Pennsylvania residents who are officers and directors of Stop the Illegal Low–Level Program In Pennsylvania. They allege that the Low–Level Radioactive Waste Disposal Act, 35 P.S. §§ 7130.101–7130.905 (1993), was enacted in violation of procedures set forth in Article III of the Pennsylvania Constitution.

The Low–Level Radioactive Waste Disposal Act, also known as Act 12, was enacted in 1988 in part to implement Pennsylvania's duties under the Appalachian States Low–Level Radioactive Waste Compact. 35 P.S. § 7130.102. Pennsylvania, Maryland, Delaware, and West Virginia entered into the Compact to provide for regional management and disposal of low-level radioactive waste as required by federal legislation. *See id.* §§ 7125.1–7125.4 (setting forth Compact). Pennsylvania is obligated under the Compact to develop a regional facility on a timely basis. *Id.* § 7125.1. Under Act 12, the Pennsylvania Department of Environmental Protection has the duty to develop and implement a comprehensive program for the

disposal of low-level radioactive waste. *Id.* § 7130.301. The Environmental Quality Board has the duty to adopt regulations to implement Act 12. *Id.* § 7130.302.

In their Complaint, filed on March 29, 1996, Appellants asked the court to declare Act 12 void and to enjoin the Appellees from enforcing it, or from making any expenditures under the Act, based upon alleged procedural irregularities in its enactment.[1] In addition, Appellants asked the court to enjoin Appellees from enforcing or making expenditures under the Low–Level Radioactive Waste Disposal Regional Facility Act, 35 P.S. §§ 7131.101–7131.1101, which in part establishes a low-level radioactive waste disposal regional facility siting fund.

In response to Appellants' Complaint, Appellees filed an Answer and New Matter alleging that Appellants' action is barred by laches. On December 6, 1996, Appellants moved for a peremptory judgment.[2] Appellants maintained that Appellees admitted in their Answer that the Act was passed in violation of constitutional procedures. On April 24, 1997, Appellees moved for summary judgment based upon the defense of laches.[3] After an unsuccessful attempt to intervene, the Appalachian States Low–Level Radioactive Waste Commission, the agent of the parties to the Compact, filed an amicus curiae brief supporting Appellees' motion for summary

---

**1.** Specifically, Appellants allege Act 12 was so altered on its passage through the General Assembly that its original purpose changed in violation of Article III, Section 1 of the Pennsylvania Constitution. Appellants further allege that Article III, Section 2 was violated because Act 12 was not referred to a committee after its original purpose was changed. Appellants also allege that Article III, Section 4 was violated because the bill was not considered on three days in either House after its original purpose was changed.

**2.** A peremptory judgment may be entered if the plaintiff's right to judgment is clear. Pa. R. Civ. P. 1098.

**3.** Summary judgment may be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Pa. R. Civ. P. 1035. Rules 1035.1–1035.4, which replaced Rule 1035, took effect several months after the filing of Appellants' action.

judgment and opposing Appellants' motion for peremptory judgment.

The Commonwealth Court granted Appellees' motion for summary judgment and held that Appellants' action is barred by laches. It found that laches applies to procedural challenges to statutes under the Constitution, that Appellees established that Appellants did not act diligently in filing their Complaint, and that the delay prejudiced the Commonwealth. The Commonwealth Court also denied Appellants' motion for a peremptory judgment. Appellants appealed the decision as of right to this Court under 42 Pa.C.S. § 723.

■ Laches is an equitable doctrine that bars relief when a complaining party is guilty of want of due diligence in failing to promptly institute an action to the prejudice of another. *Sprague v. Casey*, 520 Pa. 38, 45, 550 A.2d 184, 187 (1988). Appellants argue that the Commonwealth Court erred in granting summary judgment based upon laches because the doctrine may not be used to defeat a constitutional challenge to a statute. While Appellees concede that laches may not bar a constitutional challenge to the substance of a statute, they maintain that laches may bar a challenge like the one in this case, which only attacks the process by which the statute at issue was enacted eight years ago.

■ Whether laches may bar a constitutional challenge to a statute based upon procedural deficiencies in its enactment is an issue of first impression in Pennsylvania. Appellees correctly maintain that Pennsylvania authority to date does not preclude the application of laches to such a challenge. The Supreme Court addressed a laches argument in *Sprague v. Casey*, 520 Pa. 38, 550 A.2d 184 (1988), where a taxpayer challenged an upcoming judicial election and argued that the Constitution prohibits the election of judges in a general election year. The Commonwealth defendants and judicial nominees argued that laches barred the challenge, which was brought over six months after the taxpayer had notice of the election. In rejecting the laches defense, the Court found that the defendants did not establish that the taxpayer failed to use

due diligence in filing the action or that they were prejudiced by the delay. *Id.* at 47, 550 A.2d at 188.

Although the Court's consideration of the laches defense on the merits supports its application to procedural challenges, Appellants rely on dicta in *Sprague* stating that "laches and prejudice can never be permitted to amend the Constitution." *Id.* at 47, 550 A.2d at 188. However, in making this general statement, the Court looked to its prior decisions in *Wilson v. School Distr. of Philadelphia*, 328 Pa. 225, 195 A. 90 (1937), and *Commonwealth v. Gilligan*, 195 Pa. 504, 46 A. 124 (1900), which involved constitutional challenges to the substantive provisions of statutes. These cases do not resolve whether laches may bar a constitutional challenge based upon procedural deficiencies in a statute's enactment.[4] In addition, to the extent *Sprague* could be construed otherwise, it is factually distinguishable since the taxpayer sought to prevent an unconstitutional act from occurring rather than challenge an act that already occurred.

Other states have held that laches applies to a constitutional procedural challenge to a statute's enactment where there is no substantive objection to the statute. In *Schaeffer v. Anne Arundel County*, 338 Md. 75, 656 A.2d 751 (1995), a taxpayer filed a complaint in 1993 alleging that a county did not provide notice of an ordinance enacted in 1989 as required by the Maryland Constitution. The Maryland Court of Appeals[5] held that the claim was barred by laches. The court distinguished substantive challenges to statutes and explained that parties could not take a "wait and see" approach and challenge ordinances many years after their enactment on procedural grounds. *See also Schulz v. State of New York*, 81 N.Y.2d 336, 615 N.E.2d 953, 599 N.Y.S.2d 469 (1993) (laches barred

4. *Wilson v. School Distr. of Philadelphia*, 328 Pa. 225, 195 A. 90 (1937), involved a challenge to a statute granting taxing power to a non-elected school board in violation of the Pennsylvania Constitution. *Commonwealth v. Gilligan*, 195 Pa. 504, 46 A. 124 (1900), involved a challenge to a statute that allegedly violated the constitutional prohibition on local laws regulating school district affairs.

5. The Maryland Court of Appeals is the highest appellate court in Maryland.

constitutional challenge to public financing statute based upon lack of voter approval); *Citizens for Responsible Gov't v. Kitsap County,* 52 Wash.App. 236, 758 P.2d 1009 (1988) (laches barred due process challenge to ordinance based upon inadequate notice). *But see Sears v. Treasurer and Receiver General,* 327 Mass. 310, 98 N.E.2d 621 (1951) (laches is not a defense to a constitutional challenge to a law's execution).[6]

Having reviewed this authority, we agree with the Commonwealth Court that laches may apply where a challenge to a law is made on procedural grounds years after its passage. Our legislative processes are available to the public when a new law is enacted. Otherwise, as aptly stated by our lower court, courts would revisit statutes that are constitutionally sound in substance and that have been relied upon by the citizens of this Commonwealth.

Even if laches applies, Appellants further maintain that the Appellees have not established the doctrine's two elements. Appellees must establish (1) a delay arising from Appellants' failure to exercise due diligence and (2) prejudice to the Appellees resulting from the delay. *See Sprague,* 520 Pa. at 45, 550 A.2d at 187–88. Whether laches is established requires a factual determination based upon the circumstances of each case. *Id.* As such, it is generally an inappropriate basis for summary judgment unless the relevant facts are not in dispute. *Tudor Development Group, Inc. v. United States Fidelity & Guaranty Co.,* 768 F.Supp. 493, 496 (M.D.Pa.1991).

With respect to whether Appellants acted diligently, Appellees maintain that Act 12 was enacted in February of 1988 and that Appellants had all the information necessary at that time to challenge the Act on procedural grounds. Appellants, however, argue that there is no evidence that they knew the facts related to their claim in 1988.

6. Appellants' reliance upon authority rejecting laches as a defense to a substantive constitutional challenge is misplaced. *Asbury Park Press, Inc. v. Woolley,* 33 N.J. 1, 161 A.2d 705 (1960), involved a constitutional challenge to an apportionment law based upon census figures. *State ex rel. Baker v. Gray,* 133 Fla. 23, 182 So. 620 (1938), addressed a constitutional challenge to a statute allegedly violating the prohibition of local laws regulating fees of county officers.

■ The Commonwealth Court properly stated that the test for due diligence is not what a party knows, but what he might have known by the use of information within his reach. *See Sprague*, 520 Pa. at 45, 550 A.2d at 188. The procedures used to enact Act 12 in 1988 were published in the Legislative Journal and available to the public. The provisions of the Constitution that the Appellees purportedly violated were also readily available. Appellants themselves state in their brief that the proof necessary to sustain their Complaint lies in the legislative record. Thus, the facts related to this issue are undisputed and the Commonwealth Court properly concluded from them that Appellants did not act diligently in pursuing their claim.

■ Appellees have also established prejudice as a result of the eight year delay. Prejudice may be found where there has been some change in the condition or relations of the parties which occurs during the period the complainant failed to act. *Tudor Development Group*, 768 F.Supp. at 495–96. In support of their summary judgment motion, Appellees submitted evidence that the Department of Environmental Protection entered into a contract for the siting, development and operation of the regional disposal facility. In addition, regulations have been promulgated to implement Act 12. *See* 25 Pa.Code §§ 236.1–236.710. Appellees also submitted the Auditor General's Audit Reports of the fund established for expenses related to the facility's development, and the Department's annual reports to the General Assembly detailing activity on the project.

Appellants argue that Appellees are not prejudiced by the delay because construction has not yet begun on the disposal facility and any information that has been gathered can be used again when the statute is reenacted. These arguments, however, do not refute that Appellees have changed their position and expended time and money in reliance on the validity of Act 12. Having entered into contractual relations and worked for eight years implementing Act 12, Appellants' delay prejudices the Appellees.

In sum, we hold that the doctrine of laches may bar a challenge to a statute based upon procedural deficiencies in its enactment. We find the relevant facts here undisputed and conclude that Appellants did not act diligently in pursuing their claim and the Appellees are prejudiced by the delay.[7] We thus affirm the decision of the Commonwealth Court.

NEWMAN, J., files a dissenting opinion in which FLAHERTY, C.J., joins.

NEWMAN, Justice, dissenting.

While the majority acknowledges that laches cannot bar a "substantive" constitutional challenge to a statute, it concludes that laches may apply to a "procedural" constitutional challenge like the one at bar. Because I reject the majority's distinction between "substantive" and "procedural" constitutional provisions in this context, I respectfully dissent.

Appellants allege that Act 12 was enacted in violation of Sections 1, 2, and 4 of Article III of the Pennsylvania Constitution. These sections provide, respectively, that "[n]o law shall be passed except by bill, and no bill shall be so altered or amended, on its passage through the House, as to change its original purpose;" "[n]o bill shall be considered unless referred to a committee, printed for the use of the members and returned therefrom;" and "[e]very bill shall be considered on three different days in each House. . . ." In dismissing these claims as mere "procedural" challenges, the majority disregards the fundamental principles of democratic government that these sections embody.

A leading commentator has noted that:

The Pennsylvania Constitution of 1874 . . . was drafted in an atmosphere of extreme distrust of the legislative body and of fear of the growing power of corporations, especially the great railroad corporations. It was the product of a convention whose prevailing mood was one of reform . . . and, overshadowing all else, reform of legislation to eliminate the

---

7. We need not address the merits of Appellants' motion for peremptory judgment given our conclusion that laches bars their claims.

evil practices that had crept into the legislative process. Legislative reform was truly the dominant motif of the convention and that purpose is woven into the very fabric of the constitution.

R. BRANNING, PENNSYLVANIA CONSTITUTIONAL DEVELOPMENT 56 (1960). *See also* Robert F. Williams, *State Constitutional Limits on Legislative Procedure: Legislative Compliance and Judicial Enforcement,* 48 U. PITT. L.REV. 797, 810–11 (1987) ("Legislative abuses led to the specific limitations on legislative procedure inserted into the Pennsylvania Constitution of 1874."); David B. Snyder, *The Rise and Fall of the Enrolled Bill Doctrine in Pennsylvania,* 60 TEMP. L.Q. 315, 321 (1987) ("In 1874, Pennsylvania adopted what has been referred to as the 'Reform Constitution.' This constitution included a variety of new safeguards aimed at eliminating corruption in the legislative process. These constitutional provisions delineated specific procedures for the enactment of bills, and were designed to prevent legislative abuse.")

This Court, as well, has recognized that, "Article III was adopted to correct the evil of unwise, improvident and corrupt legislation which had become rampant at the time of its passage.... Section 1 of Article III, as well as the other provisions adopted in 1874 to prevent legislative corruption, have served well in achieving that objective." *Consumer Party of Pennsylvania v. Commonwealth of Pennsylvania,* 510 Pa. 158, 178, 507 A.2d 323, 333 (1986). *See also Perkins v. City of Philadelphia,* 156 Pa. 554, 565, 27 A. 356, 360 (1893) ("It is certainly not forgotten that the well-nigh unanimous demand which brought the convention of 1873 into existence was prompted by the evils springing from local and special legislation. That convention ... framed this article 3 on legislation.... [T]hey set about embodying in that law prohibitions which should in the future effectually prevent the evils the people complained of.") While the provisions of Article III are "procedural" in form, they nevertheless constitute the essential checks on legislative power that are the heart of the Constitution of 1874. Thus, contrary to the majority's implica-

tion, they are of no less consequence than the "substantive" constitutional provisions to which laches may never apply.

One of the judiciary's paramount responsibilities is "to insure that government functions within the bounds of constitutional prescription." *Consumer Party of Pennsylvania,* 510 Pa. at 177, 507 A.2d at 333. "While it is appropriate to give due deference to a co-equal branch of government as long as it is functioning within constitutional constraints, it would be a serious dereliction of duty on our part to deliberately ignore a clear constitutional violation." *Id.* at 178, 507 A.2d at 333. In holding that courts may dispose of constitutional challenges on grounds of laches, and thereby avoid considering their merits, this Court has created law that will allow courts to abdicate their duty. The result, as this Court warned in *Wilson v. School District of Philadelphia,* 328 Pa. 225, 195 A. 90 (1937), may be that future legislative abuses will go unchecked:

> We have not been able to discover any case which holds that laches will bar an attack upon the constitutionality of a statute as to its future operation, especially where the legislation involves a fundamental question going to the very roots of our representative form of government and concerning one of its highest prerogatives. *To so hold would establish a dangerous precedent, the evil effect of which might reach far beyond present expectations.*

*Wilson,* 328 Pa. at 242, 195 A. at 99 (emphasis added).

Furthermore, the fact that an alleged constitutional violation is raised many years after the enactment of the statute is of no moment. As this Court held in *Kucker v. Sunlight Oil & Gasoline Co.,* 230 Pa. 528, 533, 79 A. 747, 749 (1911):

> While a court should hesitate to declare a statute unconstitutional until clearly satisfied of its invalidity, and where it has been on the statute books for many years the hesitation should be all the greater, yet, if such an act is plainly in conflict with the organic law of the state, old age cannot give it life, and, when the issue of its constitutionality is properly raised, it must be declared void. We have never ruled to the contrary.

*See also Water & Power Resources Board, Department of Forests and Waters v. Green Springs Company, Inc.,* 394 Pa. 1, 6, 145 A.2d 178, 181 (1958) ("[T]he fact that [a] statute has remained on the statute books unassailed for many years does not in itself justify a court in reaching an interpretation favorable to its validity for 'old age cannot give it life.' "); *Page v. Carr,* 232 Pa. 371, 377, 81 A. 430, 432 (1911) ("If a statute is plainly in conflict with the organic law, mere lapse of time cannot cure the defect.") In short, "this [C]ourt must perform its duty, in spite of the delay." *Wilson,* 328 Pa. at 242, 195 A. at 100. Thus, I would reverse the Order of the Commonwealth Court and remand the case for trial.

FLAHERTY, C.J., joins in this dissenting opinion.