VANMETER, J., CONCURRING:
I concur with almost all of the well-researched and well-written majority opinion. I fail to perceive the necessity of opining that "read at length" can be satisfied by "read by title." I find no support in the 1890-91 Constitutional Debates that § 51 somehow bears on § 46 's requirement that a bill be "read at length."
This court has over the years addressed many times the substantive provisions the 1890-91 Constitutional Convention imposed to address the problems that had arisen due to the excessive proliferation of special legislation that had been enacted in the 1870s and 1880s. These substantive provisions are, of course, contained within Sections 59 and 60 of the Kentucky Constitution. The Convention, however, also imposed a number of procedural provisions to ensure that legislators would be *95 aware of precisely what they were voting on. These provisions are set forth in Sections 46, 51 and 56 :
No bill shall be considered for final passage unless the same has been reported by a committee and printed for the use of the members. Every bill shall be read at length on three different days in each House, but the second and third readings may be dispensed with by a majority of all the members elected to the House in which the bill is pending. But whenever a committee refuses or fails to report a bill submitted to it in a reasonable time, the same may be called up by any member, and be considered in the same manner it would have been considered if it had been reported. No bill shall become a law unless, on its final passage, it receives the votes of at least two-fifths of the members elected to each House, and a majority of the members voting, the vote to be taken by yeas and nays and entered in the journal: Provided, Any act or resolution for the appropriation of money or the creation of debt shall, on its final passage, receive the votes of a majority of all the members elected to each House.
Ky. Const. § 46
No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title, and no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred, shall be reenacted and published at length.
Ky. Const. § 51
No bill shall become a law until the same shall have been signed by the presiding officer of each of the two Houses in open session; and before such officer shall have affixed his signature to any bill, he shall suspend all other business, declare that such bill will now be read, and that he will sign the same to the end that it may become a law. The bill shall then be read at length and compared; and, if correctly enrolled, he shall, in the presence of the House in open session, and before any other business is entertained, affix his signature, which fact shall be noted in the journal, and the bill immediately sent to the other House. When it reaches the other House, the presiding officer thereof shall immediately suspend all other business, announce the reception of the bill, and the same proceeding shall thereupon be observed in every respect as in the House in which it was first signed. And thereupon the Clerk of the latter House shall immediately present the same to the Governor for his signature and approval.
Ky. Const. § 56
Our Nineteenth Century Constitutional delegates wanted to ensure that legislators were aware of the matters pending in the respective legislative houses. They resorted to the only communication means of which they were aware, print and voice, and enshrined those in our Nineteenth Century Constitution. They required bills to be reported by committee, to be printed and read at length. Upon final passage, bills were to be signed by the presiding officer openly in the legislative chamber, and read at length ... again. Of course, "read" as a verb means the action of scanning a document's words sequentially to ascertain the document's meaning. This action can be performed either by a single person silently, or by one person who utters aloud or renders in speech. My review of the Debates is that only one delegate, Delegate McDermott, addressed the "read at length" requirement in any meaningful way, stating,
*96 We found in this Committee a great divergence of opinion on the question how often these bills should be read at length. It takes a great deal of costly time to read them. Instead of having them read so much, it would be better to have them printed, so that the members could take them home and study them. You cannot take the full meaning of a bill from a reading by the Clerk. You have to read it over carefully for yourself.
1890-91 KY. CONST. DEBATES 3859. This passage supports the interpretation that "read at length" requires the clerk, or some person, to read the document aloud, audibly, at length. The main issue in this part of the Debates was the extent to which the legislature should be permitted to dispense with "reading at length." The concern expressed was that 1850 Constitution had required a bill "on three several days, ... be read over in each House" but permitted each house to dispense with the rule by a four-fifths vote. 1850 KY. CONST. , Art II, § 29. This practice of dispensing with the reading was decried by the 1890-91 delegates. The delegates therefore opted for a requirement that bills be read at length, and omitted any procedure whereby a supermajority, even a unanimous majority, could waive the requirement.
Granted, as pointed out by the majority opinion, the legislature has acquiesced in the practice of reading by title for many years. When this practice started, one can only guess. Our predecessor court's decision in Lafferty v. Huffman , 99 Ky. 80, 35 S.W. 123 (1896) may very well have laid the foundation. The court held "the enrolled bill, when attested by the presiding officers as the law requires, must be accepted by the courts as the very bill adopted by the legislature, and that its mode of enactment was in conformity to all constitutional requirements. When so authenticated, it imports absolute verity, and is unimpeached by the (legislative) journals." 99 Ky. at 92, 35 S.W. at 126. Of course, much more recently, this court overruled Lafferty. D & W Auto Supply v. Dep't of Revenue , 602 S.W.2d 420, 425 (Ky. 1980). In D & W , we held "a prima facie presumption that an enrolled bill is valid, but such presumption may be overcome by clear, satisfactory and convincing evidence establishing that constitutional requirements have not been met."
The primary concern advanced in this case is that the three-day readings requirement of § 46 was not followed. I agree with that conclusion, but I also note other constitutional requirements regarding reading at length seemingly were not complied with either. "Reading by title" does not equate to "reading at length" as required by §§ 46 and 56. The Senate sessions are televised and are readily available through the Legislative Research Commission's website. Senate Bill 151, in its original form relating to the provision of local waste water services, purportedly had its first reading on March 12, 2018. It appears not to have been read at length. Are the plain provisions of our Constitution mandatory, or not?
Certainly, a concern exists that returning to § 46 's plain language may call into question the validity of many laws. The remedy for laws already enacted may be through a resort to the equitable doctrine of laches. See, e.g., Sernovitz v. Dershaw , 633 Pa. 641, 127 A.3d 783 (2015) (noting applicability of laches to procedural claims regarding statutory enactments); Stilp v. Hafer , 553 Pa. 128, 718 A.2d 290 (1998) (discussing application of laches to bar constitutional challenge to statute based on procedural deficiencies in enactment). Laches may cure past enactment defects, but what about the process going forward? Other states with similar requirements *97 have devised any number of solutions, including electronic speed reading. A better solution to the concern that the exigencies of modern society make reading at length impractical is that contained within the Kentucky Constitution: amendment. KY. CONST. § 256.[14]

Whatever the perceived benefits of Living Constitutionalism as applied to the United States Constitution, see generally J. Harvey Wilkinson, Cosmic Constitutional Theory , 13-19 (New York: Oxford Univ. Press, 2012), that theory's acceptance (in some circles) as valid means of constitutional interpretation is no doubt attributable, at least in part, to the difficulty of amending the federal constitution. Two-thirds of Congress, three-fourths of the states. U.S. Const . Art. V. Those difficulties do not necessarily attach to the Kentucky Constitution which, just since 2000, has been amended multiple times: Marsy's Law (2018); hunting and fishing rights (2012); marriage (2004); family court (2002); general corporation law (2002); legislative annual sessions (2000); and abolition of railroad commission (2000). Granted, the process is slightly unwieldy and the challenges to a given amendment may exist, but the point is still valid that amendment of the Kentucky Constitution does not suffer the same hurdle as for the United States Constitution.