James N. KOREN, Appellant,

v.

**BOARD OF DIRECTORS OF the JERSEY SHORE AREA SCHOOL DISTRICT.**

Commonwealth Court of Pennsylvania.

Argued Dec. 5, 1994.

Decided June 26, 1995.

Reargument Denied Aug. 7, 1995.

William A. Hebe, for appellant.

Kenneth B. Young, for appellee.

Before DOYLE and FRIEDMAN, JJ., and DELLA PORTA, Senior Judge.

FRIEDMAN [1], Judge.

James N. Koren appeals from an order of the Court of Common Pleas of Lycoming County (trial court) which sustained the preliminary objections of the Board of Directors of the Jersey Shore Area School District (School District) and dismissed Koren's complaint in mandamus. We affirm.

Koren was a tenured professional employee, employed by the School District as a social studies teacher until June 1984, when declining enrollment in the School District forced his suspension from that employment pursuant to the provisions of section 1124 of the Public School Code of 1949 (Public School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 11–1124. Following his suspension, Koren served as a substitute teacher in the School District during 1985 and 1986. Thereafter, Koren continued to inquire of the School District whether there were any positions available within his area of certification and to advise the School District of his interest in returning to such a position.

In December 1992, after learning of a possible social studies position in the School District, Koren wrote to the School District Superintendent, providing a current address and informing the Superintendent of his availability for employment and his interest in securing a teaching position for which he was properly certified. However, the School District hired a new person to fill the social studies position.

On June 30, 1993, Koren filed a complaint in mandamus,[2] alleging that under the provisions of section 1125.1 of the Public School Code, 24 P.S. § 11–1125.1, he is absolutely entitled to the social studies position and the School District is obligated to recall Koren to fill that position.

By filing a complaint in mandamus, Koren sought to have the court enforce his right to be recalled as a suspended professional employee under section 1125.1(d)(2) of the Public School Code, which provides in pertinent part:

> (d)(2) Suspended professional employes or professional employes demoted for the reasons set forth in section 1124 shall be reinstated on the basis of their seniority within the school entity. No new appointment shall be made while there is such a suspended or demoted professional employe *available* who is properly certificated to fill such vacancy. . . .

24 P.S. § 11–1125.1(d)(2) (emphasis added).

In response, the School District filed preliminary objections in the nature of a demurrer, asserting that Koren's complaint did not allege all the statutory requirements for entitlement under section 1125.1 of the Public School Code. Indeed, the School District maintains that, in order to be considered available for recall, a suspended professional employee must satisfy the statutory requirements contained in subsection 1125.1(d)(3) of the Public School Code, which provides:

> (3) *To be considered available* a suspended professional employe must *annually report* to the governing board *in writing* his current address and his intent to accept the same or similar position when offered.

24 P.S. §§ 11–1125.1(d)(3) (emphasis added). Based on this subsection, the School District contends that Koren failed to state a claim upon which relief can be granted because he did not allege that he complied with statutory prerequisites by notifying the School District

---

1. Reassigned to the author on May 9, 1995.

2. Mandamus is an extraordinary writ which is available only to compel the performance of a ministerial act or mandatory duty where there exists a clear right in the plaintiff, a correspond-

ing duty in the defendant and the want of any other adequate and appropriate remedy. *Jamieson v. Pennsylvania Board of Probation & Parole*, 90 Pa.Commonwealth Ct. 318, 495 A.2d 623 (1985).

of his address and availability in writing on an annual basis since 1984.[3]

In granting the School District's preliminary objections and dismissing Koren's complaint, the trial court noted that Koren and the School District each attributed a different meaning to the term "annually" in subsection 1125.1(d)(3), but concluded that the language of that subsection clearly and unambiguously requires a suspended employee to report in writing each and every year from the time of his suspension.

On appeal,[4] Koren argues that the trial court erred in its interpretation of subsection 1125.1(d)(3). First, Koren asserts that, contrary to the trial court's determination, the statutory language is not clear and unambiguous. Koren points out that the trial court itself provides a dictionary definition of "annual" as "occurring or happening every year *or* once a year." Webster's Ninth New Collegiate Dictionary 88 (1989). Accordingly, although admitting that he failed to provide written notice setting forth his address and availability for employment *each and every year* following his suspension, Koren nevertheless claims that because he specifically informed the School District in writing of his whereabouts and availability for the social studies position in 1992, when the position became vacant, he satisfied the *once a year* statutory notice requirement. Therefore, Koren asserts, the School District was obligated to offer him that position in accordance with section 1125.1(d)(2) of the Public School Code.

Starting with the premise that the statute is ambiguous, Koren looks to the principles of statutory construction to support his position,[5] specifically section 1921(a) of the Statutory Construction Act of 1972, which provides:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

1 Pa.C.S. § 1921(a).

Koren asserts that the intent of the General Assembly in enacting subsections 1125.1(d)(2) and (d)(3) was twofold. First, in subsection (d)(2), the General Assembly sought to protect the rights of professional employees, suspended through no fault of their own, by requiring school districts to recall such employees to available positions on a priority basis. Second, by requiring the suspended employees to provide annual written notice of their whereabouts and their intention to accept offered employment, the General Assembly, in subsection (d)(3), sought to make the recall provisions administratively feasible and to protect school districts from claims asserted by suspended employees who did not protect their recall rights by maintaining contact with the school district. Koren maintains that interpreting "annually" to mean "once a year" gives effect to both these objectives in that it enables school districts to administer their recall mandate and protects the recall rights of suspended employees who alert school districts to their availability for the year in

---

**3.** Alternatively, the School District objected to Koren's complaint on grounds that it violated Rule 1019(h) of the Pennsylvania Rules of Civil Procedure. Our disposition here eliminates the need to consider this alternative position.

**4.** Our scope of review of a trial court's decision to sustain preliminary objections is limited to determining whether the trial court abused its discretion or committed an error of law. *Board of Directors of Palmyra Area School District v. Palmyra Area Education Ass'n,* 165 Pa.Commonwealth Ct. 137, 644 A.2d 267 (1994). Preliminary objections in the nature of a demurrer will only be sustained in cases which are clear and free from doubt, that is, where it appears with certainty that the law will not permit recovery.

*Pennsylvania State Troopers Ass'n v. Commonwealth,* 146 Pa.Commonwealth Ct. 467, 606 A.2d 586 (1992). In making this determination, a court will consider all well-pleaded facts as true, including any inferences which are reasonably deducible therefrom. *Globe Disposal Co., Inc. v. Department of Environmental Resources,* 105 Pa.Commonwealth Ct. 599, 525 A.2d 437 (1987).

**5.** Having determined that the statute was free of ambiguity, the trial court did not consider the principles of statutory construction. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b).

question. On the other hand, argues Koren, adoption of the "every year" definition of "annually" would result in consequences not intended by the General Assembly because, under such a construction, a teacher who misses even one year of reporting would forever forfeit his recall rights.

We cannot accept Koren's argument and, in fact, we agree with the trial court that subsection 1125.1(d) of the Public School Code clearly requires yearly notice. Moreover, even if we were to accept Koren's initial premise that the statute is subject to varying interpretations, we would reach the same conclusion.

Under subsection 1125.1(d)(2) of the Public School Code, a school district cannot make a new appointment to fill a vacancy while there is a suspended professional employee *available* to fill the position. To be considered available, a suspended professional employee must *annually* report to his school district in writing, providing his current address and stating his intention to accept an offered position that is the same as or similar to the one from which he has been suspended. 24 P.S. § 11–1125.1(d)(3).

▮ Here, Koren admits that he did not register in writing every year following his suspension in 1984; nevertheless, based on his interpretation of the term "annually," Koren claims that the School District was compelled to offer him a teaching position which became vacant in 1992 and for which he first registered in December of that year. According to Koren's interpretation, the requirement that he "annually" report does not mean that he must register with the School District *every year* in order to be eligible for recall; rather, Appellant asserts that he is entitled to be recalled to a position for which he is certified as long as he reports once during *any* year that he desires to assert his recall rights. We cannot accept this view; rather, we believe that in order to retain his recall rights, an employee has a yearly obligation to express his interest in remaining with his school district and his intention to accept reinstatement to positions which are the same as or similar to that from which the employee was suspended.

In support of his position to the contrary, Koren claims that only by interpreting the term "annually" to mean "once a year," i.e. once in any year for which an employee wishes to be considered for recall, can the legislative intent behind the enactment of section 1125.1(d)(2) and (3) be given effect. We fail to see why logic would dictate such a result. In fact, the interpretation advocated by Koren, if adopted, could lead to abuse by allowing a suspended employee to continue to accrue seniority[6] and retain recall rights while waiting to declare his "availability" until a job he desires becomes open. This cannot be what the legislature envisioned.

Indeed, we believe that interpreting the term "annually" to mean "every year" is the only means of effectuating the legislature's purpose.[7] Here, Koren sent written notification to the School District only *after* he learned of the social studies position. As Koren notes, the idea behind the notification requirement is to make a school district aware of a qualified employee's availability and address so that the school district can comply with its statutory recall obligation. However, to do this fairly and effectively, a school district must know that a suspended

---

6. Section 1125.1(a) of the Public School Code, 24 P.S. § 11–1125.1(a), provides that seniority shall continue to accrue during suspension and approved leaves of absence.

7. Where the words of a statute are not explicit, we must ascertain and effectuate the intention of the General Assembly by considering, among other matters: (1) the occasion and necessity for the statute; (2) the mischief to be remedied; (3) the object to be attained; and (4) the consequences of a particular interpretation. Section 1921(c) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(c). Applying these prin-

ciples, we are satisfied that fulfilling the objectives of the General Assembly in enacting the recall provisions discussed here requires that "annually" be construed as "every year," particularly where Koren's proposed construction would render the use of the word "annually" as mere surplusage, in contravention of fundamental principles of statutory construction. Section 1921(c) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(2); *Matter of Employees of Student Services, Inc.*, 495 Pa. 42, 432 A.2d 189 (1981); *Fumo v. Hafer*, 155 Pa.Commonwealth Ct. 520, 625 A.2d 733 (1993).

employee is available at a current address *at the time a position becomes vacant.*

Koren would have us conclude that a school district is compelled to offer an open position to a suspended employee even where the employee did not register any interest in potential jobs for several years and only made himself available for recall after a particular vacancy occurred. However, such a conclusion would subvert one of the stated purposes of section 1125.1(d) of the Public School Code in that, under this standard, a school district would not be protected from claims asserted by suspended employees who failed to maintain contact with their school districts. Indeed, to avoid such claims, a school district would have to refrain from filling vacancies as they occur and, instead, would have to wait to see if any suspended employee, of whose availability the school district was, as yet, unaware, came forward to claim the job.

Koren's position also does little to advance the other stated purpose behind the provision; that is, to protect the recall rights of suspended professional employees. Placement on the recall list as a result of a no-fault, involuntary suspension creates a statutory right in the suspended employee, in exchange for which the employee, every year, must notify his school district of his continuing desire to remain on the list.[8] It is true that under the "every year" interpretation, an employee who misses a year of reporting forfeits his recall and seniority rights; however, a yearly reporting requirement is not an onerous burden to bear for those who desire to avail themselves of the protections granted.[9] Moreover, we would point out that under Koren's "once a year" construction of section 1125.1(d)(3) of the

Public School Code, a suspended employee could continue to accrue seniority over a period of time without ever expressing any interest in returning to the school district, only to reassert his recall rights and seniority at his convenience. This would work to the disadvantage of other suspended employees who regularly report their availability and intent to resume their employment. Teachers on the recall list are entitled to know whether they are moving up in seniority; failure to require suspended employees to register with their school districts *every* year defeats this objective.

Because Koren cannot establish a clear legal right to recall or a corresponding duty on the part of the School District to offer reinstatement, his request for mandamus must fail. Accordingly, we affirm the trial court's order sustaining the School District's preliminary objections and dismissing Koren's complaint.

### ORDER

AND NOW, this 26th day of June, 1995, the order of the Court of Common Pleas of Lycoming County, dated March 22, 1994, is hereby affirmed.

DELLA PORTA, Senior Judge, dissenting.

I respectfully dissent. The majority opinion clearly and correctly sets forth the case's procedural history, the facts, the law pertaining to mandamus, the scope of review at a preliminary objection in the nature of a demurrer stage, the applicable sections of the Public School Code, the Statutory Construction Act of 1972, and the issues. My only

---

8. We would liken this situation to a license renewal case, where the license holder initially must earn his right to the license and then reestablish that right by renewing the license each year. As long as the holder continually renews it, his right to retain the license is automatically recognized; however, if the holder allows the license to lapse by failing to renew it in a given year, he reverts to his unlicensed status and can only reacquire the license by earning it again.

9. In this regard, we would clarify that subsection 1125.1(d)(3) of the Public School Code links the recall rights of a suspended employee to that

employee's provision of notice that he *intends* to accept a similar position when offered. Thus, the notice does not mean that an employee is actually immediately available to assume a vacant position; rather, the report evidences the employee's continued interest in returning to work for the school district. In fact, in section 1125.1(d)(4) of the Public School Code, the legislature specifically allows postponement of acceptance where a suspended employee is enrolled in a college program. If a suspended employee fails to provide the required notice, he is saying that he is no longer interested in being recalled.

quarrel is with the specific issue of the interpretation of the word "annually" in Section 11–1125.1(d)(3) of the Public School Code,[1] which is the heart of the case.

The arguments made by both parties on this specific issue are again well set forth by the majority. There being no definition in the Code of the word "annually", both parties made recourse to its definition in Webster's Dictionary:[2] "occurring or happening every year *or* once a year." The Trial Court chose "every year" over "once a year," and so does the majority. This is where I part company with the majority.

To begin with, the Trial Court and the majority are in error in allocating the burden of proof to Koren instead of the School District where it belongs at this stage of the proceedings. The latter filed the preliminary objection in the nature of a demurrer. As correctly stated by the majority in footnote 4, such objection will only be sustained in cases which are clear and free of any doubt, that is, where it appears with certainty that the law will not permit recovery.[3] In reaching this decision, the court must consider all well-pleaded facts as true, including any inferences which are reasonably deductible therefrom.[4]

In reaching its decision, the Trial Court ignored the above and simply concluded that the language of Section 11–1125.1(d)(3) is clear and unambiguous. Can a reasonable mind say that this conclusion, as to the meaning of the word "annually," is clear and free of any doubt? The majority valiantly struggles to answer this crucial question in the affirmative. I do not believe it has succeeded.

In my opinion, every reason given in support of this answer fails. The first of these is the circuitous argument of defining "available" in terms of a suspended professional employee. To be so "available" he "must *annually* (meaning every year) report to his school district in writing." (Majority Slip op. at 6–7). No supporting reason given. Secondly, the majority rejects, without reason, that the legislative could have envisioned the accrual of seniority by a suspended employee without registering his availability every year. (*Id.* at 8).

Thirdly, the majority argues that interpreting "annually" as once a year would cause the school district to have to refrain from filling vacancies in order to see if a suspended employee, whose availability is not known by the district, comes forward to claim the job. (*Id.* at 9). No such preposterous interpretation is advocated by Koren, or anyone else. Once a year simply means that at the time a vacancy occurs, any suspended employee who had supplied his name and address as being interested and available not more than a year prior thereto, would have to be considered before new employees.

Fourthly, the majority is also concerned that the "once a year" interpretation somehow would work a disadvantage to other suspended employees who have chosen to register every year. (*Id.* at 10–11). First of all, this case does not in any way involve any priority ranking list of such employees, nor does this section of the School Code deal with such ranking. Secondly, whatever interpretation is given to "annually," it would apply to all such employees and no one would be disadvantaged by any other employee's conduct. If repeated registration creates a priority ranking, so be it. The "once a year"

---

1. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 11–1125.1(d)(3). Section 11–1125.1(d) provides in pertinent parts:
   (2) Suspended professional employes or professional employes demoted for the reasons set forth in section 1124 shall be reinstated on the basis of their seniority within the school entity. No new appointment shall be made while there is such a suspended or demoted professional employe available who is properly certificated to fill such vacancy....
   (3) To be considered available a suspended professional employe must annually report to the governing board in writing his current address and his intent to accept the same or similar position when offered.

2. Webster's Ninth New Collegiate Dictionary 88 (1989).

3. *Pennsylvania State Troopers' Ass'n v. Commonwealth,* 146 Pa.Commonwealth Ct. 467, 606 A.2d 586 (1992).

4. *Globe Disposal Co. v. Department of Environmental Resources,* 105 Pa.Commonwealth Ct. 599, 525 A.2d 437 (1987).

interpretation does not interfere with such ranking. The majority concludes this argument by saying that this "objective," of teachers knowing where they stand on the seniority list, would be defeated. The so-called "objective" is totally created by the majority without any basis of fact. This is pure factfinding by the majority.

Lastly, the majority makes short shrift of the forfeiture of seniority rights which would result from the "every year" interpretation to *any suspended employee who for any reason,* including reason of health, fails to report in any one year. (*Id.* at 10). Surely, this cannot be the intent of the legislature which spelled out its intent in the very section in question when it said: "No new appointment shall be made while there is such a suspended or demoted professional employee available who is properly certificated to fill such vacancy." [5]

The majority even attempts, in footnote 8, to liken this situation to a license renewal case which a licensee must renew every year to keep the license. By definition, this is comparing apples with oranges. How can we compare a license which is issued for just one year with a professional employee's certification, which is usually for life?

Clearly, none of these reasons advanced by the majority, singly or cumulatively, can meet the burden of proof in this preliminary objection in the nature of a demurrer to establish with certainty in a manner which is clear and free from doubt, that the law will not permit Koren to prevail.

On the contrary, if we were to reach the merits of this case, it would seem to me that the interpretation of the Code as Koren maintains, is more likely to *fulfill the admittedly twofold purpose of the legislature:* (1) to protect the recall rights of suspended professional employees who are qualified, interested and available, before making new appointments; and, (2) to protect School Districts from claims asserted by suspended employees who have not protected their recall rights by reporting their interest, availability and a recent enough address, within the year, where they can be reached.

Accordingly, I would reverse the Order of the Trial Court sustaining the School District's preliminary objections and dismissing Koren's Complaint in Mandamus.

Therefore, I respectfully dissent.

---

**5.** Section 11–1125.1(d)(2) of the Public School Code.