IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gaugamela Holdings, LLC,      :
                   Appellant    :
                             :
        v.             : No. 1438 C.D. 2017
                             : Submitted:  July 20, 2018
The School District of Pittsburgh  :
and Gladstone Community      :
Partnership, LLC            :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                  FILED:  August 10, 2018


        Gaugamela Holdings, LLC (Gaugamela) appeals an order of the Court of Common Pleas of Allegheny County (trial court) sustaining the preliminary objections of the School District of Pittsburgh (District) and Gladstone Community Partnership, LLC (GCP) to Gaugamela's complaint in equity seeking to cancel and void the sale of District property for failure to comply with the Public School Code of 1949 (Code).[1]  For the reasons that follow, we affirm.

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 – 27-2702.

**I.**

**A.**

In 2013, the District sought to sell property located at 327 Hazelwood Avenue in Pittsburgh, consisting of approximately 6.6 acres of land upon which is located the former Gladstone Middle School (Property).  Normally, school district property is sold under Section 707(1)-(3) of the Code[2] which provides that a school

---

[2] 24 P.S. § 7-707(1)-(3).  That section provides, in pertinent part, as follows:

> The board of school directors of any district is hereby vested with the necessary power and authority to sell unused and unnecessary lands and buildings, by any of the following methods and subject to the following provisions:
>
> (1) By public auction, either on the premises to be sold or at places selected by the school board, after due notice by publication in one or more newspapers of general circulation published within the county or the school district and in the legal newspaper in said county, if any, once a week for three successive weeks before the date fixed for said sales, and by hand bills, one or more of which must be posted on the property proposed to be sold, and at least five of which must be posted at conspicuous places within the vicinity of said real estate.  Terms and conditions of sale shall be fixed by the board in the motion or resolution authorizing the sale.
>
> (2) Upon sealed bids requested by the school board, notice of the request for sealed bids to be given as provided in clause (1) of this section.  Terms and conditions of sale shall be fixed by the board in the motion or resolution authorizing the request for sealed bids.
>
> (3) At private sale, subject to the approval of the court of common pleas of the county in which the school district is located.  Approval of the court shall be on petition of the board of school directors, which petition shall be executed by the proper officers of the board, and shall contain a full and complete description of the land proposed to be sold, a brief description and character of the

**(Footnote continued on next page…)**

district's board of directors may sell unused and unnecessary lands and buildings by public auction, upon sealed bids requested by the school board, or at private sale, with this last method subject to the approval of the court of common pleas of the county in which the school district is located.

However, school districts can also sell certain property pursuant to Section 1704-B(4.1)(i) of the Code, which further provides:

> (4.1) In addition to powers enumerated in this act, a school district designated as a Commonwealth partnership school district may dispose of unused and unnecessary lands and buildings, if such buildings are in excess of twenty-five (25) years of age, in the following manner, notwithstanding the provisions of section 707 of this act:
>
> (i) By negotiated sale, provided the district has an affidavit of at least three (3) persons who are familiar with the value of real estate in the locality in which the lands and buildings proposed to be sold are located, who

---

**(continued…)**

> building or buildings erected thereon, if any, the name of the prospective purchaser, the amount offered for the property, and shall have attached thereto an affidavit of at least two persons who are familiar with the values of real estate in the locality in which the land and buildings proposed to be sold are located, to the effect that they have examined the property, that the price offered therefor is a fair and reasonable one and in their opinion a better price than could be obtained at public sale, and that they are not interested, either directly or indirectly, in the purchase or sale thereof. Before the court may act upon any such petition it shall fix a time for a hearing thereon and shall direct that public notice thereof be given as provided in clause (1) of this section. . . .

have examined the property and set forth a value for the property and who opine that the consideration for the property is equal to or better than that which could be received by sealed bid. The sale price shall not be less than the highest value set forth in the three (3) affidavits.

Section 1704-B(4.1), added by the Act of May 10, 2000, P.L. 44, *as amended*, 24 P.S. § 17-1704-B(4.1)(i). As can be seen, under this provision, property is sold through negotiated sale and court approval is not required. There is no dispute that the District qualifies as a Commonwealth partnership school district.

The District decided to use the negotiated sale process here. It obtained three appraisals to help determine the market value for the Property, two of which indicated a fee simple market value of $215,000 and one which indicated the Property had no value. At a legislative meeting conducted on November 24, 2015, the District passed a resolution authorizing and directing the sale of the Property to Hazelwood Initiative, Inc. for $250,000. GCP was subsequently formed with its sole member being Hazelwood Initiative, Inc., and the District then ratified the sale of the Property to GCP. The District deeded the Property to GCP on September 21, 2016, the parties closed on November 8, 2016, and the deed was recorded on November 9, 2016.

However, prior to the sale, on October 12, 2015, and again on November 18, 2015, Gaugamela submitted an offer to purchase the Property for $1.5 million. Gaugamela's offer indicates that it intended to use the Property "for the operation of a research and development facility, alongside a technology incubator, focused on supporting companies that are engaged in research in

4

software development, robotics and biotechnology." (Reproduced Record (R.R.) at 13a.) Gaugamela was never informed that its bid was not responsive, that it was not a responsible bidder or that the District was going to sell the Property through a negotiated sale. On the contrary, Gaugamela contends that the District's agent informed it that its bids were in compliance with the District's published procedures in place for the sale of District property.

**B.**

On November 21, 2016, one year after its proposal had been rejected and after closing and the recording of the deed to GCP, Gaugamela filed a complaint in the trial court seeking an injunction preventing the sale of the Property to GCP. On December 29, 2016, Gaugamela filed an amended complaint in equity requesting that the trial court cancel and void the deed of conveyance because the District had not obtained the requisite affidavits required by Section 1704-B(4.1)(i) of the Code, 24 P.S. § 17-1704-B(4.1)(i), before selling the Property to GCP.

On January 18, 2017, GCP filed preliminary objections arguing that the amended complaint failed to conform to law or rule of court and should be dismissed for improper service. It also demurred, asserting that the information contained in the certified appraisals of the Property went beyond the limited legal requirements of 24 P.S. § 17-1704-B(4.1)(i). On February 22, 2017, the Honorable Michael Della Vecchia (Judge Della Vecchia) issued an order, without explanation or an accompanying opinion, sustaining both of the District's preliminary objections and giving Gaugamela 30 days to file a second amended complaint.

**C.**

On March 17, 2017, Gaugamela filed a second amended complaint in equity purportedly as a disappointed bidder and as a taxpayer in both the City of Pittsburgh and the Commonwealth, as well as on behalf of any parties that may intervene in the case.[3]  The second amended complaint alleges that the District's November 2015 resolution indicated the sale of the Property was being implemented pursuant to and in conformity with both 24 P.S. § 7-707(1)-(3) and 24 P.S. § 17-1704-B.  (Second Amended Complaint ¶ 18.)  The second amended complaint alleges that the District did not provide notice, by publication or posting, of the proposed sale to GCP prior to closing and did not obtain approval of the sale from the trial court.  Moreover, the District did not obtain adequate affidavits prior to the sale but merely three appraisals, none of which were submitted under oath or otherwise verified subject to penalty of perjury, and none of which reference or purport to evaluate GCP's offer vis-à-vis what could be obtained by a sealed bid procedure.  Gaugamela asserts that the sale was not conducted in conformity with the pertinent sections of the Code, is void *ab initio*, and the trial court should enter an order canceling and voiding the deed.

GCP and the District then filed preliminary objections to the second amended complaint asserting that Gaugamela lacks standing to maintain its action because it is not a taxpayer.  GCP and the District also assert that Gaugamela's

---

[3] On July 5, 2017, John T. Rossmiller and Cantwell G. Carson filed petitions to intervene in this matter, each asserting he is an owner of real property within the City of Pittsburgh and pays taxes to the District.  The record does not indicate that the trial court ever ruled on these petitions.

6

claims are barred by the doctrine of laches because it failed to file its initial action until 13 months after its offer was publicly rejected by the Board of School Directors and after the District and GCP had already closed on the sale of the Property. They further argue that the three commissioned appraisals performed and certified by licensed individuals satisfy the legal requirements set forth in Section 1704-B of the Code and, therefore, there is no legal justification to grant Gaugamela the relief it requests.

In their preliminary objections, GCP and the District also assert that Judge Della Vecchia granted the preliminary objections to the first amended complaint based upon the doctrine of laches. GCP and the District allege that in ruling from the bench, the court stated that if Gaugamela chose to file a second amended complaint, it must state specific damages rather than file another complaint in equity. Because Gaugamela ignored these clear instructions, GCP and the District argue that the second amended complaint in equity should be dismissed for failure to comply with the trial court's instructions.

Gaugamela then filed preliminary objections to GCP and the District's preliminary objections, arguing that GCP and the District's preliminary objections are based upon unsubstantiated assertions as to the claimed basis for Judge Della Vecchia's prior ruling. Gaugamela argues that there is no evidence in the record and no opinion from the trial court outlining the reasons why Judge Della Vecchia sustained the preliminary objections to the first amended complaint, and there was no restriction placed upon Gaugamela's leave to file a second amended complaint.

7

Gaugamela also argues that GCP and the District rely upon unsubstantiated allegations of fact outside of the pleadings concerning their laches argument.

On July 7, 2017, the trial court, this time through the Honorable Joseph James (Judge James), issued an order sustaining GCP and the District's preliminary objections as to all counts and overruling Gaugamela's preliminary objections.[4] In his Rule 1925(a) opinion, Judge James explained that Judge Della Vecchia dismissed Gaugamela's first amended complaint pursuant to the doctrine of laches, holding that because it unreasonably delayed in instituting the case until over a year after its offer was rejected, it is precluded from filing another complaint in equity. Independently, he also found that Gaugamela's claims are barred by the doctrine of laches and it otherwise failed to plead a legally sustainable cause of action against GCP and the District.[5] Finally, citing to *J.P. Mascaro & Sons, Inc. v. Township of Bristol*, 497 F. Supp. 625, 627 (E.D. Pa. 1980), Judge James held

---

[4] In ruling on preliminary objections, the trial court was required to accept as true all well-pled allegations of material fact, as well as all inferences reasonably deducible from those facts. *Christ the King Manor v. Department of Public Welfare*, 911 A.2d 624 (Pa. Cmwlth. 2006) (en banc). However, this Court need not accept unwarranted inferences, conclusions of law, argumentative allegations or expressions of opinion. *Id.* For preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery. *Id.* Any doubt must be resolved in favor of the non-moving party. *Id.*

[5] Laches is an affirmative defense that must be raised in New Matter. Pa. R.C.P. No. 1030. However, the issue of whether the trial court should have addressed the affirmative defense of laches when ruling on preliminary objections was not raised before the trial court or on appeal.

that Gaugamela lacked standing to bring the action because it is not a taxpayer in the District. This appeal followed.[6]

## II.

While Gaugamela raises numerous issues on appeal, we begin with its argument that the trial court erred in determining that it failed to take prompt action or otherwise exercise due diligence to set aside the sale of the Property to GCP and, therefore, the doctrine of laches operates as a complete defense to the second amended complaint.

"Laches is an equitable doctrine that bars relief when a complaining party is guilty of want of due diligence in failing to promptly institute an action to the prejudice of another." *Wheels Mechanical Contracting and Supplier, Inc. v. West Jefferson Hills School District*, 156 A.3d 356, 362 (Pa. Cmwlth. 2017) (quoting *Stilp v. Hafer*, 718 A.2d 290, 292 (Pa. 1998)). The doctrine bars the prosecution of stale claims and stands for "the maxim that those that sleep on their rights must awaken to the consequence that they have disappeared." *Fulton v. Fulton*, 106 A.3d 127, 131 (Pa. Super. 2014). "The test for due diligence is not what a party knows, but what he might have known by the use of information within his reach." *White v. Township of Upper St. Clair*, 968 A.2d 806, 811 (Pa. Cmwlth. 2009), *appeal denied*, 995 A.2d 355 (Pa. 2010). Moreover, "prejudice may be found where there has been some change in the condition or relations of

---

[6] Our review of the decision to sustain preliminary objections is limited to determining whether the trial court committed an error of law or abused its discretion. *Koren v. Board of Directors of the Jersey Shore Area School District*, 661 A.2d 449, 451 n.4 (Pa. Cmwlth. 1995).

the parties which occurs during the period the complainant failed to act." *Stilp*, 718 A.2d at 294.

Here, Gaugamela admittedly made its offers to purchase the Property in October and November of 2015. The second amended complaint acknowledges that on November 24, 2015, after Gaugamela made its second offer, the District publicly passed a resolution authorizing and directing the sale of the Property to GCP for $250,000. At that time, Gaugamela knew or should have known that its offer had been rejected in favor of a significantly lower offer. While Gaugamela sat on its rights and failed to take any action over the next year, the other parties moved forward with and closed on the sale of the Property, with the deed to GCP being recorded on November 9, 2016.

Gaugamela did not file its initial complaint with the trial court seeking an injunction preventing the sale of the Property until November 21, 2016, which is one year after its "bids" had been rejected and after closing and the recording of the deed. Its amended complaint in equity was not filed until December 29, 2016. There was obviously a change in the relations of the parties during Gaugamela's period of inaction as the parties proceeded through and consummated the sale of the Property, with GCP now being the record owner. Gaugamela did not act with due diligence in pursuing its claim and its delay of over a year in bringing this action prejudiced GCP and the District, that already invested time and money in completing the sale of the Property.[7]

---

[7] Given the way in which we resolve this matter, we need not address Gaugamela's remaining arguments.

10

Accordingly, the order of the trial court is affirmed.


_____
DAN PELLEGRINI, Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gaugamela Holdings, LLC,  :
               Appellant  :
                 :
        v.  : No. 1438 C.D. 2017
                 :
The School District of Pittsburgh  :
and Gladstone Community  :
Partnership, LLC  :

## **O R D E R**

AND NOW, this <u>10</u>th day of <u>August</u>, 2018, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter dated July 7, 2017, is affirmed.

_____
DAN PELLEGRINI, Senior Judge