**William and Evelyn PEDEN,**

v.

**GAMBONE BROTHERS DEVELOPMENT COMPANY and College Woods Inc. and Borough of Trappe.**

**Appeal of Gambone Brothers Development Company and Borough of Trappe.**

Commonwealth Court of Pennsylvania.

Argued March 13, 2002.
Decided May 13, 2002.

where the lessee is to pay all expenses normally associated with ownership.

Arthur L. Jenkins, Jr., Norristown, for appellants.

Gilbert P. High, Jr., Norristown, for appellees, W. Peden and E. Peden.

Lawrence Sager, Pottstown, for appellee, Borough of Trappe.

Before LEADBETTER, Judge, SIMPSON, Judge, and MIRARCHI, Jr., Senior Judge.

OPINION BY Judge SIMPSON.

Gambone Brothers Development Co. (Gambone Brothers) and College Woods, Inc. (College Woods) (collectively Gambone) appeal the order of the Court of Common Pleas of Montgomery County (trial court) denying their motion for post-trial relief from a zoning ordinance enforcement decree. We affirm.

In 1995, Gambone received final approval from Trappe Borough for a townhouse subdivision and development known as "Town Homes at College Woods." The development is adjacent to the Pedens' single-family home. Section 606F of Trappe Borough Zoning Ordinance (Ordinance) requires screening buffers along all exterior property lines between dwelling units of different size and density. The buffers are to consist of, generally, a 25–foot wide "natural" screen consisting of trees and shrubs. The approved development, however, did not provide for a 25–foot wide natural screen. Instead, it provided for a wooden fence six feet in height. The windows of the townhouses erected along the Pedens' property line look over the fence into the Pedens' property and into portions of their house.

Concerned about privacy, the Pedens attempted to negotiate a solution through meetings with the Montgomery County Planning Commission and Gambone. After negotiations failed, the Pedens filed an equity action in the Court of Common Pleas for Montgomery County (trial court). Thereafter, the Pedens filed a motion for a preliminary injunction. Following a hearing, the trial court determined that Gambone was in violation of the Ordinance for failing to construct an appropriate screening buffer. The trial court granted the Peden's motion for a preliminary injunction. The trial court, however, delayed execution of the injunction to permit Gambone to develop a "satisfactory landscape plan" within 180 days. Following an appeal, this Court affirmed, but remanded the case for imposition of an appropriate bond with the grant of the preliminary injunction.

Thereafter, the trial court held a bench trial, during which Mr. Peden testified. He sent a letter to the solicitor for Trappe Borough in 1992 detailing his concerns about the proposed project. As early as 1995, he saw proposed development plans which did not contain a 25 foot vegetative buffer. In 1997, when excavation and con-

struction began, Mr. Peden sent another letter to the Borough Council detailing his issues over invasion of privacy issues and damage to trees on his property. On the advice of the solicitor for the Borough, Mr. Peden retained independent counsel.

The Pedens also presented the testimony of David Clarke, the owner of a landscape contracting business in the area, whom they retained because Gambone failed to comply with the trial court's order requiring preparation of a plan with a buffer. When Mr. Clarke was called to testify, counsel for Gambone objected that neither curriculum vitae nor report had been received from the witness despite timely discovery requests. The Pedens' lawyer responded that Mr. Clarke's name and the subject of his testimony was disclosed in writing about three months prior to trial. About two months before trial a plan showing a buffer and an estimate, both prepared by Mr. Clarke, were sent to Gambone's lawyer. Over objection, the court permitted Mr. Clarke to testify.

The trial court found in favor of the Pedens and rejected the argument that the fence constituted a free form screening buffer, noting:

> [N]o variance from the screening buffer provisions was applied for or granted by the proper authority. It is also incredulous to think that Council in approving the plan with a fence was granting the fence as an alternative buffer by

conditional use within the protections of the MPC. No conditional use for an alternative buffer has ever been sought or mentioned, heretofore. Nor is there evidence that an alternative buffer was applied for, permission given by Borough Council on request, and there is no evidence that Borough Council approved an alternative buffer. A buffer is not mentioned amongst all the various applications, minutes, resolutions, development plans, discussions and approvals both in Trappe Borough Council meetings and the Trappe Borough Planning Commission.

*William Peden v. Gambone Bros. Dev. Co.*, No. 98–07818, filed November 6, 2000 (C.P.Montgomery). The court ordered Gambone to install a buffer in compliance with Mr. Clarke's plan. The proposed cost of the landscaping was $135,000 and the cost of the plan's preparation was $3,000, yielding a total cost of $138,000.00. At present, Gambone appeals from the trial court's order denying Gambone's post trial motion, thus leaving intact the trial court's order that Gambone install a buffer zone pursuant to the Ordinance. In this appeal, Gambone raises three issues that are addressed below.

### I.

First, Gambone contends that it is not in violation of the Ordinance[1] because

---

1. Section 606 F of the Ordinance provides as follows:

   **Buffer Requirements:** Along all exterior property lines, screening buffers shall be provided in accordance with the following regulations, except when dwelling units in a proposed development shall abut dwellings of the same use and density....

   1. The owner shall place and maintain a planting area 25 feet in width containing deciduous trees, evergreen trees, evergreen and/or deciduous shrubs, flowering trees and/or shrubs and ground cover of sufficient planted density to produce a total visual screening consistent with the topography, the existing vegetation and the use of adjacent land. Wherever possible the owner shall make every effort to retain existing natural screening, such as vegetation and topography. The purpose of this planting is to block objectionable views, enhance good views, provide seasonal color, add texture and aroma, ameliorate possible noise and generally enhance the limits of the property.

Trappe Borough approved its development plan that expressly provided for a wooden fence in lieu of a natural buffer. In particular, Gambone argues that the Borough acted within its discretion to approve the fence as an alternative buffer pursuant to Ordinance section 606(F)(4). The Pedens counter that the "law of the case doctrine" bars us from considering this issue.

The law of the case doctrine is a judicial rule that discourages a court involved in later phases of a litigated matter from reopening questions decided by another judge of the same court or a higher court in an earlier phase of the litigation. *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326 (1995). The doctrine is designed to promote judicial economy, uniformity of decision making, protect the settled expectations of the parties, maintain the consistency of the litigation and

end the case. *Id.* The law of the case doctrine provides in pertinent part that "upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court...." *PPG Industries v. Commonwealth, Board of Finance and Revenue*, 567 Pa. 580, 790 A.2d 261, 268 (2002) *quoting Commonwealth v. Yarris*, 557 Pa. 12, 731 A.2d 581, 586 (1999).

The law of the case doctrine, however, does not apply where: (1) there has been an intervening change in the controlling law; (2) there has been a substantial change in the evidence or facts giving rise to the litigation; or (3) the prior ruling was clearly erroneous and would create a manifest injustice if followed. *Starr*.

We previously held that the fence violates the ordinance.[2] *Gambone Bros.*

2. All evergreen trees to be installed shall not be less than five (5) feet in height at the time of planting and shall be of such species that expected height at maturity shall not be less than 15 feet. All evergreen shrubs to be installed shall not be less than eighteen (18) inches in height at the time of planting and shall be of such species that expected height at maturity shall not be less than 6 feet for screening shrubs.

3. All deciduous trees to be installed shall not be less than twelve (12) feet in height and two and one-half (2–½) inch caliper at the time of planting. Deciduous trees shall be of such species that expected height at maturity shall not be less than 50 feet. Flowering trees shall have expected height of not less than 20 feet.

4. Applicants are encouraged to provide informal, free-form screening buffers when appropriate which need not be located entirely within the minimum required 25 foot width. Such alternative buffers shall be subject to approval by the Borough Council, upon recommendations of the Borough Planning Commission, either or both of whom may seek the advise [sic] of a licensed land-

scape architect in the review of the alternative plan.

5. Planting plans prepared by a licensed landscape architect in Commonwealth of Pennsylvania shall be required for all screening buffers, which shall clearly show and list the locations, size, species, and number of plant material proposed to be used.

6. All plant material shall be guaranteed for two years. All plant material which dies within that time shall be replaced by the applicant at his cost.

2. In our prior decision in this case we held:

Appellants [Gambone] argue that their fence is simply an 'informal, free-form screening buffer' and thus satisfies the requirements of 606F(4). This argument is simply absurd. Section 606F quite clearly requires a natural screen; it speaks of nothing else. A fence is neither informal nor free form. Moreover, a licensed landscape architect would not be needed to devise a planting plan for a simple fence separating the properties. Reading 606F as a whole, it is inconceivable that a six or eight foot wooden fence erected below townhouses of several stories would be contemplated as an acceptable alternative to a twenty-five foot

*Dev. Co. v. William Peden,* 748 A.2d 237 (Pa.Cmwlth., No. 1531 CD 1999, filed February 15, 2000) (*Peden I* ). This prior holding is the law of the case. The Borough's approval of the final development plan does not establish compliance with the ordinance, nor does it excuse Gambone from erecting an appropriate buffer. Because another panel of this Court already decided this question, we may not reconsider whether the fence complies with the Ordinance.[3]

## II.

■ Gambone also contends the Pedens' enforcement action should be barred as untimely, noting that the Pedens had access to the development plan as early as 1995 and delayed in bringing an action to enforce the Ordinance. In support of these assertions, Gambone relies on sections 909.1(b)(2)[4] and 1002–A[5] of the Pennsylvania Municipalities Planning Code (MPC).

Gambone argues that the Pedens were required to appeal within thirty days after borough council approved the development plan. Relying on *Mars Area Residents for a Safe Community v. Zoning Hearing Board of Adams Township,* 108 Pa. Cmwlth. 505, 529 A.2d 1198 (1987), Gambone contends that the Pedens were required to file an appeal within 30 days. In *Mars Area,* the objectors sent a letter to the zoning officer requesting enforcement of a zoning ordinance prohibiting a microwave tower. The zoning officer denied objectors' request, and several months later objectors appealed to the board. On appeal, both the board and the trial court dismissed the appeal as untimely pursuant to section 915 of the MPC[6] and objectors appealed to this Court. We held that because objectors had actual notice for several months and failed to file an appeal within thirty days, their claim was untimely.

This case, however, is distinguishable. Here, the Pedens initiated their cause of action by filing a complaint in equity pursuant to section 617 of the MPC.[7] The

swath of trees and vegetation meant to screen views from on property to another.

3. Gambone also argues the trial court erred in determining that § 606(F)(4) of the Ordinance is invalid on the grounds that it lacks constitutional notice and procedural safeguards mandated by the MPC. The trial court did not render § 606(F)(4) of the Ordinance invalid. The court merely stated that to the extent that § 606(F)(4) was applied here, the necessary constitutional safeguards were not present. In addition, in *Peden I,* we held the fence could not satisfy § 606(F)(4)

4. Act of July 31, 1968, P.L. 805, *as amended,* Section 909.1 added by Section 87 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10909.1(a)(5).

5. Added by Section 101 of the Act of December 21, 1988, P.L. 1329, 53 P.S. 11002 A.

6. Section 915 of the MPC was repealed by the Act of December 21, 1988, P.L. 1329. The time limitations on appeals to the zoning hearing board originally found in Section 915 of the MPC are now found in Section 914.1 of the MPC which was added to the MPC by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10914.1. Section 914.1 requires all appeals from board determinations to be filed within 30 days after notice of the determination is issued.

7. Added by Section 61 of the Act of the December 21, 1988, P.L. 1329, 53 P.S. § 10617. That section, entitled, "causes of action," provides:

In case any building, structure, landscaping or land is, or is proposed to be, erected, constructed, reconstructed, altered, converted, maintained or used in violation of any ordinance enacted under this act or prior enabling laws ... any aggrieved owner or tenant of real property who shows that his property or person will be substantially affected by the alleged violation ... may institute any appropriate action or proceeding to prevent, restrain, correct or abate such building,

action taken by the Pedens was not an appeal from an action or decision of a municipal body or official as was the action taken by residents in *Mars Area.* The Pedens, an aggrieved property owner, filed their direct action with the trial court to enforce the Ordinance. Further, as noted by the trial court, the failure of Borough officials to properly enforce their own ordinances should not run to the Pedens' detriment.

The Pennsylvania Supreme Court's decision in *Frye v. City of Monongahela,* 526 Pa. 170, 584 A.2d 946 (1991) is instructive. In *Frye,* a landowner constructed a carrier pigeon loft in his backyard contrary to the permissible uses in the zoning ordinance. Thereafter, an adjacent landowner filed a complaint in equity to enforce the ordinance. Relying on Section 617 of the MPC, the Court determined that the adjacent landowner, "as an aggrieved neighbor, had an independent right to seek relief from a zoning violation next door and that right could be asserted in an equity action." *Id.* at 175, 584 A.2d at 948. Further, the *Frye* Court held that when, "deliberate violations of a zoning ordinance have the effect of wrongfully infringing on the property rights of a neighbor, that neighbor is entitled to prompt vindication in a court of equity without regard to alternate administrative remedies that might be available. We have always so held and we continue to do so." *Id.* at 176, 584 A.2d at 948. Based on this authority, we conclude that the Pedens properly brought their action pursuant to Section 617 of the MPC to enforce the Ordinance.

■ Alternatively, Gambone contends that the affirmative defenses of estoppel and laches operate to bar the Pedens' claim. Laches is an equitable doctrine that bars relief when a complaining party is guilty of want of due diligence in failing to promptly institute an action to the prejudice of another. *Stilp v. Hafer,* 553 Pa. 128, 718 A.2d 290 (1998). Thus, in order to prevail on an assertion of laches, Gambone must establish a delay arising from the Pedens' failure to exercise due diligence and prejudice resulting from the delay. The party asserting laches as a defense must present evidence demonstrating prejudice from the lapse of time. *Commonwealth ex. rel. Baldwin v. Richard,* 561 Pa. 489, 751 A.2d 647 (2000).

■ Further, a party asserting estoppel must show failure to enforce the law over a long period of time or some form of active acquiescence of illegal use, property owner's good faith throughout proceedings and property owner's innocent reliance evidenced by substantial expenditures. *Smith v. Zoning Hearing Board of Conewago Township,* 713 A.2d 1210 (Pa. Cmwlth.1998).

■ Gambone claims that the Pedens failed to exercise due diligence, but fails to present any evidence to demonstrate that it was prejudiced by the delay, rendering this claim meritless. Moreover, in the context of equitable defenses, this Court has held that mere delay in the enforcement of a zoning ordinance does not create a vested right to use property in violation of zoning regulations. *Smith.*

### III.

Gambone further contends the trial court erred by admitting the expert report and testimony of the Pedens' landscaping expert, David Clarke. We disagree.

■ The admission of testimony from an expert witness is within the sound

structure, landscaping or land, or to prevent, in or about such premises, any act, conduct,

business or use constituting a violation....

discretion of the trial court. As such, our standard of review is very narrow; we may only reverse upon a showing that the trial court clearly abused its discretion or committed an error of law. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also prejudicial to the complaining party. *Majczyk v. Oesch,* 789 A.2d 717 (Pa.Super.2001). Further, where an expert's identity is disclosed sufficiently before trial, that expert's testimony is admissible. *Christiansen v. Silfies,* 446 Pa.Super. 464, 667 A.2d 396 (1995) (disclosure of expert's identity six days prior to trial is sufficient to permit adverse party with notice and time to investigate the expert's credentials). Here, disclosure made weeks before trial provided sufficient notice, and no abuse of discretion occurred in receiving Mr. Clarke's testimony.

■ Gambone also contends that it was an abuse of discretion for the trial court to select the more expensive of the two proposed remedies. In particular, the plan ordered by the trial court contains insufficient detail to justify the total cost quoted.

At trial, Mr. Clarke testified that the cost of implementing his proposed landscape plan would be $135,000.00. R.R. 214a. He testified that the retaining wall would cost $45,900.00. R.R. 214a. Delivery and installation of the shrubs would cost $48,460.00. R.R. 215a. Removal of the trees currently on the Pedens' property would cost $15,600.00. R.R. 215a. Fi-

nally, constructing the berm and mulching would cost $25,050.00. R.R. 215a. Mr. Clarke opined that this landscaping plan would comply with the Ordinance. R.R. 220a.

Another written estimate discussed at trial, but not admitted into evidence, contained a quote of $88,610.00. R.R. 321a. With regard to this estimate, Mr. Clarke testified that the estimate only contemplates planting trees along the Pedens' property line, whereas the more expensive estimate provides for plantings along both property lines. R.R. 217a. The Pedens requested that the trial court require plantings along both sides of the property line to create a complete visual buffer and the trial court agreed. We conclude that the trial court did not abuse its discretion or commit an error of law by approving the plan that will cost approximately $135,000.00 to implement.[8]

■ Accordingly, we affirm the order of the trial court.[9]

Judge LEADBETTER joins in Parts I and III and concurs in the result only as to Part II.

### ORDER

AND NOW, this 13th day of May, 2002, the Order of the Court of Common Pleas of Montgomery County is affirmed.

---

**8.** We also note that after this Court affirmed the trial court's grant of the preliminary injunction and remanded the case for the posting of an appropriate bond, the parties agreed on a $3,000.00 bond for the landscape plan to be prepared. R.R. 278a. However, because Gambone never submitted a plan prior to trial, the Pedens took it upon themselves to bring a resolution to this matter by presenting the testimony of Mr. Clarke. R.R. 278a.

**9.** As a final issue, Gambone asserts that the trial court erred by issuing an order, which *required it to perpetually maintain the total visual buffer.* However, Gambone failed to raise this issue in its post-trial motions filed with the trial court and, as a result, this issue is waived. *Taylor v. City of Philadelphia,* 692 A.2d 308 (Pa.Cmwlth.1997) (litigants must raise all allegations of error on post-trial motions or they will be deemed waived on appeal).