J-S21027-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GLENVILLE MOSLEY | |
| Appellant | No. 514 EDA 2014 |

Appeal from the Judgment of Sentence October 26, 2010
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0111341-2006

BEFORE:  BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED MAY 06, 2016**

Glenville Mosley appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following his convictions for several offenses stemming from his sexual abuse of a minor, D.G.  After careful review, we vacate and remand for resentencing.

The underlying facts of the case are as follows.  In 1990, Mosley moved into the house where five-year old D.G. was living with his mother, G.G., two older brothers and two younger sisters.  In 1991, G.G. and Mosley were married and had a child together.

_____

[*] Former Justice specially assigned to the Superior Court.

Over time, G.G.'s two older sons, M.G. and L.G., moved out, and by 1994 or 1995, D.G. was the only boy in the house. At that point Mosley began to sexually abuse D.G.

In 1998, while D.G. was staying at the home of his older brother, M.G., he told M.G. about the abuse, which had occurred over a period of years. M.G. informed an uncle, who contacted the Philadelphia Department of Human Services (DHS). A DHS social worker interviewed D.G. at his aunt's house, and DHS then contacted D.G.'s mother and Mosley. D.G. and his siblings were removed from the family home and were placed in foster care.

D.G. initially did not wish to pursue a case against Mosley. In April 2004, D.G. made a statement to police but still did not wish to prosecute. However, in December 2005, after becoming a father, D.G. went to the police and asked them to pursue the matter. Mosley was arrested in 2006.

In Fall 2009, following several pretrial hearings, the Honorable Leslie Fleisher made the following rulings: (1) pre-arrest delay did not violate Mosley's due process rights; (2) the Commonwealth could not present testimony in its case in chief, that following Mosley's interview with a DHS investigator on May 26, 1998, he attempted suicide; and (3) the Commonwealth could not present testimony in its case in chief that in 1986 Mosley pled no contest to attempted involuntary deviate sexual intercourse (IDSI) with his 13-year-old stepson.

The case proceeded to a jury trial before the Honorable Willis W. Berry, Jr., on January 28, 2010. On February 3, 2010, the jury found Mosley guilty of involuntary deviate sexual intercourse (IDSI),[1] indecent assault,[2] endangering the welfare of children,[3] and corruption of a minor.[4]

On October 26, 2010, Judge Berry sentenced Mosley to 10 to 20 years' incarceration for IDSI. It is clear from the record that the court imposed the sentence pursuant to 42 Pa.C.S. §9718(a)(1), which requires a minimum sentence of ten years when the victim of IDSI is less than sixteen years of age. The court imposed a consecutive term of incarceration of one to two years for child endangerment, and concurrent terms of incarceration of one to two years for corruption of a minor and indecent assault, resulting in an aggregate sentence of 11 to 22 years in prison.

Mosley filed a direct appeal to this Court, which we quashed on July 2, 2012, for failure to file a brief. Mosley filed a PCRA petition on April 15, 2013, which was granted on January 21, 2014. This timely *nunc pro tunc* appeal followed and the matter was assigned to the Honorable Charles A. Ehrlich due to Judge Berry's retirement in September 2012.

---

[1] 18 Pa.C.S. § 3123(a)(1).

[2] 18 Pa.C.S. § 3126(a)(1).

[3] 18 Pa.C.S. § 4304.

[4] 18 Pa.C.S. § 6301.

On January 31, 2014, following the grant of an extension pending receipt of the notes of testimony, Mosley filed a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. By leave of court, he filed an amended statement on June 18, 2014. The trial court filed its Rule 1925(a) opinion on June 29, 2015.

On appeal, Mosley raises the following issues for our review:

1. The court erred and abused its discretion when it denied [Mosley's] motion for dismissal resulting from pre-arrest delay. The Court erred and abused its discretion when it ruled that the Commonwealth's delay in arresting [Mosley] in this case did not violate [Mosley's] due process rights.

2. The Court erred and abused its discretion when it ruled that the defense had not met the standard for the second prong of a dismissal motion even though the same court ruled that the Defendant had been prejudiced as a result of pre-arrest delay. Such ruling by the court was clearly erroneous. *Peden v. Gambone Bros. Development Co.*, 798 A.2d 305 (Pa. Cmwlth. 2002); *In re Estate of Rochez*, 606 A.2d 563 (Pa. Cmwlth. 1992).

3. The trial court erred and abused its discretion when it denied [Mosley's] motion for a mistrial where the Commonwealth's complaining witness testified that this older brother may have been sexually assaulted by [Mosley], testimony which was explicitly ruled as inadmissible by the trial court when it ruled on the Commonwealth's motion for admission of prior bad acts. In violation of the trial court's order, the Commonwealth elicited the exact testimony the trial court ruled as inadmissible to provoke [Mosley] into moving for a mistrial and was done either intentionally or with gross negligence to prejudice [Mosley] to the point of the denial of a fair trial. *Commonwealth v. Anderson*, 38 A.3d 828, 835 (Pa. Super. 2011) (en banc) (quoting *Commonwealth v. Smith*, 615 A.2d 321, 325 (Pa. 1992).

4. The trial court erred and abused its discretion when it denied [Mosley's] objection and motion for mistrial where the assistant district attorney asked [Mosley] (1) whether he had

ever participated in sexual offenders counseling, in violation of the trial court's ruling excluding evidence of prior bad acts, and (2) whether [Mosley] had ever stated that he would attend sexual offender's counseling, statements made to a religious pastor prior to trial.

5. [Mosley] was convicted of, *inter alia*, involuntary deviate sexual intercourse and sentenced to the mandatory minimum of ten (10) years upon a finding that the victim was under sixteen (16) years of age.  Such a determination, made by the judge at sentencing, violated [Mosley's] due process rights, *Commonwealth v. Hilbert*, 382 A.2d 724, 728 (Pa. 1978), and was in clear violation of recent decisional case law holding that any fact or factor which raises the mandatory minimum sentence is a fact that must be determined beyond a reasonable doubt.  *Alleyne v. United States*, ___ U.S. ___, 133 S.Ct. 2151 (2013); *Commonwealth v. Wolfe*, 106 A.3d 800, 801 (Pa. Super. 2014).

Brief of Appellant, at 8-10.

Mosley first asserts that the trial court committed legal error when it denied his motion for dismissal for pre-arrest delay.  He argues that Judge Fleisher applied an incorrect standard when making her decision. While we agree that Judge Fleisher did indeed apply the wrong standard, Mosley is not entitled to relief.

At a hearing on September 30, 2009, the Commonwealth suggested that the standard for pre-arrest delay was set forth in *Commonwealth v. Jette*, 818 A.2d 533 (Pa. Super. 2004). In *Jette*, a panel of this Court relied on the opinion announcing the judgment of the court in *Commonwealth v. Scher*, 803 A.2d 1204 (Pa. 2002), which held that to establish a due process violation, the defendant must first show that the delay caused him actual prejudice and the evidence must show "the delay

was the product of intentional, bad faith, or reckless conduct by the prosecution." *Id.* at 1221. *Scher* further held that "[n]egligence in the conduct of a criminal investigation, without more, will not be sufficient to prevail on a due process claim based on pre-arrest delay." *Id.* at 1222.

The following exchange took place between the court and counsel at the September 30, 2009 hearing:

> The Court: I'm trying to get this so we can address each prong – circumstances that would determine the reason for the Commonwealth's delay? And it may not be the Commonwealth's. And was it the product of any, you know, kind of intentional bad faith or reckless conduct by the prosecution, then it would be a due process violation, but negligence is not enough to prevail. I think that's the most basic way to put that paragraph [of *Jette*]. And the court would have to weigh the totality of the circumstances. Is there anything anyone wishes to add?
>
> The Commonwealth: No.
>
> The Court: In terms of that being the analysis which applies?
>
> Defense Counsel: I agree.

N.T. Pre-Trial Hearing, 9/30/09, at 52-53.

At a hearing on October 1, 2009, the court continued to discuss pre-arrest delay with counsel:

> The Court: Negligence would not be attributable to the Commonwealth?
>
> The Commonwealth: Well, if the [c]ourt finds that the Commonwealth acted negligently that would not be enough to find a violation of the defendant's due process rights.
>
> The Court: Okay. Anyway, we did discuss this yesterday. [Defense counsel], do you agree so far?

Defense Counsel:        I am in agreement so far.

N.T. Pre-Trial Hearing, 10/1/09, at 17.

At the commencement of the hearing on October 2, 2009, the court referenced *Jette* and stated that Mosley had established actual prejudice. N.T. Pre-Trial Hearing, 10/2/09, at 7. However, after hearing testimony from two Commonwealth witnesses regarding the delay, the court concluded that Mosley's due process rights were not violated. *Id.*, at 152.

In *Commonwealth v. Wright*, 865 A. 894 (Pa. Super. 2004), a panel of this Court noted that *Jette* incorrectly relied on the opinion announcing the judgment of the court in *Scher* because it had no precedential value. Instead, the applicable standard, set forth in *Commonwealth v. Snyder*, 713 A.2d 596 (Pa. 1998), was that a due process violation occurs where there is actual prejudice to the defendant and there are no proper reasons for postponing the defendant's arrest. The *Wright* court stated:

> We deem it appropriate in extended pre-arrest delay cases there should be a shifting burden with the initial burden upon the accused to establish that the pre-arrest delay caused actual prejudice, and the subsequent burden upon the Commonwealth to provide a reasonable basis for the extended delay in prosecuting the crime.

*Wright*, *supra* at 902.

Mosley asserts that the trial court erred by applying the *Scher* standard adopted by *Jette*. Furthermore, he argues that the Commonwealth's evidence at the hearing failed to meet the burden of establishing proper reasons for the delay under *Wright*.

This Court decided *Wright* on March 22, 2004, more than five and one-half years before the first hearing in the instant case. However, at the hearings on September 30 and October 1, 2009, counsel for Mosley explicitly stated his agreement with the application of the *Scher*/*Jette* standard. At the hearing on October 2, 2009, the court stated, "I believe, yesterday, we all agreed, counsel and I, that that was the standard applied." N.T., Pre-Trial Hearing, 10/2/09, at 7. Mosley did not object to this statement.

Because Mosley agreed to application of the intentional bad faith or recklessness standard for pre-trial delay, any challenge to that standard is waived on appeal. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Failure to raise or preserve a due process claim precludes an appellate court from considering the issue. *Commonwealth v. Colavita*, 993 A.2d 874, 89-94 (Pa. 2010).[5]

Mosley next asserts that the trial court erred by applying the law of the case doctrine to its review of the issues raised on appeal.[6] This claim

---

[5] Even if we were to apply the standard set forth in *Snyder* and *Wright*, we would conclude that there were valid reasons for the delay based on the victim's unwillingness to pursue the matter until he became an adult. This Court should defer to the prosecutor's conclusions that under the circumstances a case is not ripe for court. *Commonwealth v. Snyder*, 761 A.2d 584, 589 (Pa. Super. 2000).

[6] Mosley did not raise this issue in the statement of questions involved. However, because this failure has not hampered our review of the issue, we will we consider it despite Mosley's failure to conform to the Rules of
*(Footnote Continued Next Page)*

arises, in part, from the unusual procedural history of this case. As noted, Judge Fleisher decided the pre-trial motions, and Judge Berry conducted the trial. However, by the time permission to appeal from the judgment of sentence *nunc pro tunc* was granted, both members of the bench had retired. Accordingly, it fell to Judge Ehrlich to file a Rule 1925(a) opinion.

Judge Ehrlich notes in his Rule 1925(a) opinion that the law of the case doctrine precluded him from assessing the merits of the errors alleged by Mosley. **See** Trial Court Opinion, 6/29/15, at 6, 15. The law of the case doctrine "refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." **Commonwealth v. Starr**, 664 A.2d 1326, 1331 (Pa. 1995) (citation omitted).

Mosley argues that the trial court's reliance on the law of the case doctrine was misplaced. We agree, but find that he is not entitled to relief. It is not the law of the case doctrine that precluded Judge Ehrlich from "reopening questions decided by another judge," but rather Pa.R.A.P. 1701, which provides that after an appeal is taken the trial court may no longer proceed further in the matter." A Rule 1925(b) opinion is not an opportunity

---

*(Footnote Continued)*

Appellate Procedure. **See In re Adoption of G.K.T.**, 75 A.3d 521, 524 n.4 (Pa. Super. 2013).

to reopen previously decided issues; it simply provides an explanation for the order on appeal.

While his analysis of some of the issues is less than comprehensive, we note that in his Rule 1925(a) opinion, Judge Ehrlich extensively reviews the standard for granting relief on a claim of pre-trial delay, and concludes that Judge Fleisher applied the incorrect standard. Judge Ehrlich also explains why this Court should remand the matter for resentencing. Because the trial court's opinion adequately addresses the issues on appeal, no relief is due on this claim.

Mosley next argues that the trial court erred by not granting a mistrial when on direct examination, the complainant, D.G., referred to Mosley having abused his older brother.

> We review the trial court's decision to deny a mistrial for an abuse of discretion. **Commonwealth v. Boone**, 862 A.2d 639, 646 (Pa. Super. 2004). A mistrial is necessary only when "the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." **Commonwealth v. Parker**, 957 A.2d 311, 319 (Pa. Super. 2008), *appeal denied*, 600 Pa. 755, 966 A.2d 571 (2009). A mistrial is inappropriate where cautionary instructions are sufficient to overcome any potential prejudice. **Id.**

**Commonwealth v. Bedford**, 50 A.3d 707, 712-13 (Pa. Super. 2012).

At trial, the Commonwealth established that one to two weeks elapsed between the final time Mosley abused the victim and the time that the victim told his eldest brother, M.G., what had happened. N.T. Trial. 1/29/10, at 21-22. The following line of questioning ensued by the Commonwealth:

Q: Where were you the last time this defendant did these things?

A: On 25th (Street).

Q: Which room?

A: Front room.

Q: On the second floor of the house?

A: Yes.

Q: What happened then . . .?

A: That's when told me that I should be comfortable with it now. That was it.

And from there, I went and stayed at my brother's house and he asked me was anything taking place. From my understanding, this happened to him.

Defense Counsel: Objection.

Q: Let me ask you this . . ... Without saying what [M.G.] told you specifically, what did you say to him?

A: I told him something was going on. He was doing things to me. His wife noticed that I didn't want to go back home and that I wanted to stay at his house.

So, from my understanding, this may have taken place with my second oldest brother.

Defense Counsel: Objection.

The Court: Let me see counsel at the side.

*Id.* at 22-23.

An on-the- record discussion took place in the robing room, during which Mosley's counsel rejected the offer of a curative instruction and moved for a mistrial. The court decided to take the motion under advisement, and denied it on the last day of trial.

- 11 -

"[M]ere 'passing references' to prior criminal activity will not necessarily require reversal unless the record illustrates definitively that prejudice results." *Commonwealth v. Thompson*, 106 A.2d 742, 752 (Pa. Super. 2014). "When the Commonwealth introduces evidence which does not directly establish appellant's [other] criminal conduct, but which is merely suggestive of it, the operative question is whether the jury could reasonably infer from the facts presented that the accused had engaged in [other] criminal activity." *Commonwealth v. Edwards*, 762 A.2d 382, 388 (Pa. Super. 2000), quoting *Commonwealth v. Thomas*, 521 A.2d 442, 449-450 (Pa. Super. 1987).

Mosley argues that the statements prejudiced him in the eyes of the jury. Furthermore, he argues that the statements bolstered the victim's credibility. Appellant's Brief, at 33.

At the pre-trial hearing, the court specifically held that the Commonwealth would not be allowed to present testimony in its case-in-chief regarding Mosley's 1986 conviction for attempted IDSI. Based on this ruling, Mosley asserts that the Commonwealth had an affirmative duty to direct D.G. not to make any statements about allegations of abuse against Mosley by anyone. Mosley argues that the Commonwealth's failure to give this instruction to D.G. was an attempt to circumvent the trial court's ruling and constituted prosecutorial misconduct.

The Commonwealth directed D.G. not to mention Mosley's incarceration or that Mosley had attempted suicide after being confronted

about allegations of abuse against D.G. This instruction was consistent with the pre-trial orders precluding introduction of this evidence by the Commonwealth. Contrary to Mosley's assertion, there was nothing in the pre-trial rulings that would have put the Commonwealth on notice that it needed to direct D.G. not to mention any other possible victim.

It is also clear from the testimony cited above that the Commonwealth's questions to D.G. about what happened to him and what he told his brother were not intended to elicit statements regarding other victims.

Here, in light of the speculative nature of the challenged testimony, Mosley has failed to establish that the trial court abused its discretion in denying his request for a mistrial. *See Bedford*, *supra*. It is also apparent from the record that Mosley's related claim of prosecutorial misconduct fails.

Mosley next argues that the trial court erred by permitting the Commonwealth to question him about privileged material during cross-examination.

On direct examination, Mosley testified that in 2004, DHS investigated matters involving his daughters, and that the allegations were deemed to be unfounded. N.T. Trial, 2/1/10, at 153-54. On cross-examination, the following exchange took place between the assistant district attorney and Mosley:

> Q: This allegation from 2004, when DHS came out to investigate you for having sex with your two stepdaughters and

your biological daughter was initiated by Michelle Humphrey in March of 2004; isn't that right?

A:    Yes.

Q:    Tonya Baker is your sister, correct?

A:    Yes.

Q:    And Robert Baker is her husband?

A:    Yes.

Q:    And you know Tonya Baker's husband, Robert, had a conversation with Pastor Henry Davis; isn't that right?

A:    I don't know anything about that.

Q:    Do you know Pastor Henry Davis?

A:    Yes, I do.

Q:    Isn't it true you promised your brother-in-law, Robert Baker that you were going to go for sex offenders counseling once Michelle Humphrey made those allegations against you?

Defense Counsel:       Objection.

The Court:              Overruled.

Q:    You never said to Pastor Henry Davis that you would go to counseling and then reneged on that promise to go?

A:    I never made a promise to him at all.

Q:    In fact, you never had sex offenders counseling in your life; is that correct?

A:    No.

*Id.* at 159-60.  The Commonwealth then engaged in a completely different line of questioning.

Mosley argues that without filing a pretrial motion, the Commonwealth questioned him about his communications with Pastor Davis.  He claims that the communications are subject to the statutory privilege between priest and

penitent set forth in section 5943 of the Judicial Code, which provides, in relevant part:

**§ 5443    Confidential communications to clergymen**

No clergyman, priest, rabbi or minister of the gospel of any regularly established church or religious organization . . . who while in the course of his duties has acquired information from any person secretly and in confidence, shall be compelled, or without consent of such person, to disclose that information in any legal proceeding, trial or investigation before any government unit.

42 Pa.C.S. § 5943.

He further asserts that questioning about the communication should have been outside the presence of the jury, so the court could have determined the applicability of the privilege.

From our review of the record, it is clear that Mosley did not assert the privilege and did not request a mistrial. His objection to whether he had promised his brother-in-law that he would go to sex offenders counseling did not preserve the issue of a statutory privilege. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Accordingly, we engage in no further review of this issue.

Mosley's final claim is that pursuant to *Alleyne v. United States*, ___ U.S. ___, 133 S.Ct. 2151 (2013) his sentence is illegal. In *Commonwealth v. Wolfe*, 106 A.3d 800 (Pa. Super. 2014), *petition for allowance of appeal*

*granted*, 121 A.2d 433 (Pa. 2015),[7] this Court held that section 9718 of the Sentencing Code governing mandatory minimum sentences for persons convicted of specified crimes, including IDSI, against victims less than sixteen years of age is facially unconstitutional. Therefore, we agree with the trial court that the sentence for IDSI must be vacated and remanded for resentencing without imposition of a mandatory minimum sentence.

Because Mosley was sentenced for multiple offenses, we vacate the entire judgment of sentence and remand to the trial court for resentencing. *See Commonwealth v. Wilson*, 934 A.2d 1191 (Pa. 2007) (where appellate court's disposition upsets trial court's original sentencing scheme, remanding for resentencing is appropriate disposition).

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/6/2016

_____

[7] The Supreme Court heard oral argument in *Wolfe* on November 18, 2015. On January 20, 2016, the Supreme Court ordered the case be resubmitted for reconsideration on previously filed briefs.